[No. H017604. Sixth Dist. Feb. 22, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO NOLASCO FERNANDEZ, Defendant and Appellant.

**COUNSEL**

Michael A. Kresser and Paul Bernstein, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Amy Haddix, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COTTLE, P. J.**—Defendant Mario Nolasco Fernandez appeals from the order extending his commitment as a mentally disordered offender (MDO) pursuant to section 2970 of the Penal Code.[1] He contends that the violation of certain time limits set forth in sections 2970 and 2972 resulted in an invalid extension of his commitment. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. *The Underlying Offense*

On October 31, 1991, defendant pled guilty to one count of lewd and lascivious conduct upon a child (§ 288, subd. (a)), with enhancements under section 1203.066, former subdivision (a)(8) (substantial sexual conduct with victim under age 11) and subdivision (a)(9) (substantial sexual conduct and position of special trust with victim). Defendant was 20 years old at the time of the offense, and the victim was his 7-year-old sister.[2]

#### B. *Sentencing, Custody and Parole*

On December 3, 1991, defendant was sentenced to a term of three years, with a recommended placement at California Youth Authority (CYA). CYA rejected him and recommended placement at a 24-hour psychiatric medical facility. Defendant was sent to San Quentin for processing and later to California Men's Colony, San Luis Obispo.

On October 23, 1993, defendant was paroled. He was arrested on a parole violation on December 11, 1995, and subsequently released. On June 24, 1996, defendant was again arrested on a parole violation. On June 27, 1996, defendant agreed to serve 11 months in state prison. Defendant was received at San Quentin on July 11, 1996.

#### C. *Evaluation of Defendant*

Between March and May of 1997, defendant was evaluated by the Department of Corrections and the Department of Mental Health pursuant to

---

[1] All subsequent statutory references are to the Penal Code unless otherwise specified.

[2] According to the probation report, after defendant followed his seven-year-old sister into a bathroom in their home, he penetrated her vagina and rectum with his penis. He admitted to police that he had vaginal intercourse with his sister and sodomized her, and that his sister cried and called out for help. He stated that as he pulled up his pants, his sister reached out and touched his penis. Defendant told police, "I think she wanted to do it some more, I didn't."

section 2962, to determine whether he should be certified as an MDO. Due to a disagreement between evaluators, defendant was not certified as an MDO until May 7, 1997. On May 20, 1997, defendant was paroled and transferred to Atascadero State Hospital for treatment.

Defendant requested a hearing before the Board of Prison Terms pursuant to section 2966 to contest his certification. Additional medical evaluations were conducted, and on July 25, 1997, the Board of Prison Terms affirmed defendant's commitment. On July 30, 1997, the medical director at Atascadero State Hospital issued a letter opining that defendant was an MDO within the meaning of section 2970, and recommending to the district attorney that defendant's commitment be extended for one year beyond his original parole termination date of September 18, 1997.

D.   *Section 2970 Petition*

On August 1, 1997, the district attorney filed a petition, pursuant to section 2970, to extend defendant's commitment for one year. On August 12, 1997, the district attorney filed a second petition pursuant to section 2970, alleging essentially the same facts. The petition identified defendant's parole termination date as September 18, 1997. Also on August 12, 1997, the district attorney filed an order to produce defendant. On August 13, 1997, the court consolidated the petitions, and appointed the public defender to represent defendant.

On August 26, 1997, defendant was transferred from Atascadero State Hospital to the Santa Clara County jail. On August 27, 1997, the public defender appeared and requested a one-week continuance to consult with defendant. On September 3, 1997, defendant requested a trial date, which was set for September 8, 1997. On September 8, 1997, the case was assigned to a courtroom for trial on September 11, 1997.

E.   *The Trial on the Section 2970 Petition*

On September 11, 1997, the case was called for trial. Defendant waived his right to a jury trial and the deputy district attorney stated that she was ready to proceed. Defense counsel gave notice of her intention to file a motion to dismiss the petition, and requested a continuance to file written materials in support of the motion. The court deemed the trial to have commenced as of September 11, deemed the motion to dismiss a motion *in limine*, and continued the matter until September 16, 1997, to allow defense counsel to file a written brief regarding the motion. The district attorney was given until September 18, 1997, to file a response. The court set a hearing date for the motion to dismiss on September 22, 1997.

On September 22, 1997, the motion to dismiss was heard. Defendant argued that the petition should be dismissed because the prosecution had failed to meet statutory provisions requiring (1) issuance of the medical director's letter requesting the section 2970 extended commitment not later than 180 days before defendant's parole termination date, and (2) commencement of trial no later than 30 days before defendant's parole termination date. The motion was argued and submitted.

On September 25, 1997, the court ruled on the motion, holding that the 180-day and 30-day time limits were not mandatory but directory, and stating: "This means that a violation will not result in an immediate dismissal and in fact will not result in a dismissal unless there is a showing that defendant's due process rights have been violated." Although the court found no good cause for noncompliance with the 180-day rule, the court found that defendant's due process rights had not been violated. As to the 30-day rule for commencement of trial, the court found that there was good cause for the failure to commence the trial 30 days before defendant's scheduled release, because the district attorney had filed the petition immediately upon receiving the late evaluation from the Department of Mental Health. The court therefore denied defendant's motion to dismiss the petition, and determined that evidence on the section 2970 petition would be heard on September 30, 1997.

On September 30, 1997, the court heard the testimony of witnesses, including a clinical psychologist and defendant, regarding defendant's mental condition for purposes of the section 2970 petition.

Dr. William Safarjan, a clinical psychologist at Atascadero State Hospital, testified at trial. Dr. Safarjan had interviewed defendant twice at Atascadero, and reviewed defendant's records from Atascadero and the Department of Corrections. Dr. Safarjan opined that defendant suffered from schizophrenia, a severe mental disorder, and from paraphilia, a "preoccupation with sexual thoughts or acting out which interferes with functioning." He further opined that defendant exhibited borderline intellectual functioning and a polysubstance abuse problem, including use of cannabis and cocaine.

Regarding the diagnosis of schizophrenia, Dr. Safarjan testified that defendant experienced visual, auditory, and tactile hallucinations. According to Dr. Safarjan, defendant believed that bugs and small animals were crawling on his body, and had delusions that he was under the control of rodents.[3]

Regarding paraphilia, Dr. Safarjan testified that defendant had sexual urges beyond the normal range. Defendant admitted sexual contacts with

---

[3]According to Dr. Safarjan's testimony, defendant reported that early in his life, perhaps when he was seven years old, a rat appeared and bit him on the lip. The rat began speaking

children during his late teenage and adult years. In Dr. Safarjan's opinion, defendant was not necessarily attracted to children, but rather saw them as available targets who would not report him. Defendant suggested that his relationship with the rat had a sexual component that could trigger arousal. Defendant specifically told Dr. Safarjan that the voices had told him to have intercourse with his sister. Defendant further admitted having sexual urges while incarcerated, leading to at least one sexual relationship with a male patient. Defendant indicated his belief that his sexual activities would make his future wife's skin smooth.

Dr. Safarjan described much of defendant's discourse as "tangential" and difficult to understand. Defendant seemed to suggest that he had had several past lives. In Dr. Safarjan's opinion, defendant's mental disorders were not in remission at the time he left the hospital in August. Counsel agreed that Dr. Safarjan would observe defendant's testimony in court and make an updated evaluation of his mental condition.

The prosecution called defendant to testify. Defendant testified that he had been given injections of "Haldol," which gave him headaches, backaches and insomnia. Defendant told his doctor that the medication made him feel bad and that he did not want to take it. The medication, however, did relieve defendant's hallucinations.

Defendant admitted that he had a tattoo on his leg of "NOE," the name of a rat that he "had problems with." Defendant maintained that the rat was dead, and that Pope John Paul and President Clinton knew about the rat. Defendant explained that President Clinton learned of the rat through defendant's dream, which reaches more than two billion miles.

Defendant testified that the rat NOE appeared to him in his dreams, along with two girl rats named Celia and Caren. Defendant stated that the rats talked to him most recently when he had his last "sexual moment" in his room. Defendant had seen the girl rats in his room within the last couple of days, but that they were now dead. Asked if he knew how they died, defendant responded: "Yeah. You know that the Pope, John Paul, the Second, when he had that Clinton reading Bible test over there, the priest that came off the plane, the green and white plane, he's the one that—I think that killed them."

Defendant testified that the rat NOE was a movie star, and had a video out in video stores called "NOE." Defendant further explained that, on one

to defendant, and defendant felt under its control. The rat told defendant to do "bad things" and defendant felt compelled to respond. Defendant referred to the rat as NOE, and had a tattoo of the rat's name on his leg.

occasion, the female rat had come out of his dream and danced with him. Defendant described a fourth rat, named Ban, who caught people using drugs and sent them to prison. Although these rats were dead, defendant stated that the rats at present ("the ones right now") would take care of him. They had come with him from Atascadero to the jail and were present.

The prosecution recalled Dr. Safarjan to testify regarding defendant's current mental state. Based upon defendant's testimony, Dr. Safarjan opined that defendant's mental disorder was not in remission, and that defendant posed a physical danger to others. First, Dr. Safarjan observed that defendant's mental disorder impairs his judgment. Defendant responds to orders or commands which originate from his disorder. Such commands, combined with defendant's sexual disorder, appeared to cause the underlying offense, as well as other relationships with children and with prisoners in the jail.

Second, Dr. Safarjan noted that defendant disliked his medication and had a history of substance abuse, both of which increased the likelihood that, without supervision, defendant would discontinue treatment and eventually reoffend. Dr. Safarjan further noted that defendant previously had violated his parole by using cocaine, by failing to comply with outpatient drug treatment, and by visiting the victim. These parole violations suggested that defendant posed a risk of reoffending.

In addition, defendant did not appear to understand the nature of his mental disorder, a necessary prerequisite for successful treatment. Because defendant's illness developed early in life, the prognosis for a full recovery was less favorable. Defendant had tested positive for hepatitis and may not understand what it means to transmit it to another person. Dr. Safarjan opined that defendant's current medication was not controlling the symptoms of his mental illness, and that other medications might produce better results.

Asked what specific danger defendant would pose as a result of his mental disorder, Dr. Safarjan replied, "To me the danger would be reengaging in sexual conduct with children." Dr. Safarjan was asked to rate, on a scale of 1 to 10 (with 10 being absolute certainty) the certainty of his conclusions as to (1) the diagnosis of schizophrenia and paraphilia, (2) the opinion that defendant was not in remission, and (3) the opinion that defendant presents a substantial danger of harm to others as a result of his severe mental disorder. For each of these conclusions, Dr. Safarjan rated his certainty level as 9 or 10 out of 10.

F.   *Order Extending Commitment*

After hearing the evidence, the trial court extended defendant's commitment for one year from his parole termination date, to September 18, 1998.

The court's written order was filed on October 3, 1997. Defendant filed a timely notice of appeal from the court's order extending his commitment.

## II. DISCUSSION

### A. *Statutory Background*

A brief outline of the MDO legislation, codified in section 2960 et seq., is helpful at the outset. The MDO statutes require certain offenders who have been convicted of enumerated violent crimes to submit to continued treatment by the State Department of Mental Health as a condition of their parole. (§ 2962.) To impose such a condition, the following factors must be established: (a) the prospective parolee has a severe mental disorder that is not in remission or cannot be kept in remission without treatment; (b) the mental disorder was one of the causes of, or was an aggravating factor in, the commission of his or her crime; (c) the prospective parolee has been in treatment for 90 days or more within the year prior to his or her parole release day; and (d) the prospective parolee has been certified by a designated mental health professional to represent a substantial danger of physical harm to others by reason of his or her severe mental disorder. (§ 2962, subds. (a)-(d); *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 831 [58 Cal.Rptr.2d 32]; *People v. Kirkland* (1994) 24 Cal.App.4th 891, 901 [29 Cal.Rptr.2d 863].)

Before a prisoner may be classified as an MDO under section 2962, both the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health must evaluate the prisoner, and a chief psychiatrist of the Department of Corrections must then certify to the Board of Prison Terms that the prisoner meets the statutory criteria set forth above. (§ 2962, subd. (d)(1).) The statute contains specific provisions for further professional examinations if the professionals evaluating the prisoner do not concur.[4]

A prisoner has the right to a hearing before the Board of Prison Terms to contest a finding of mental disorder under section 2962. (§ 2966, subd. (a).)

[4]At the time of defendant's 1997 recommitment trial, section 2962, former subdivision (d)(2) provided: "If the professionals doing the evaluation pursuant to [subdivision (d)(1)] do not concur that (i) the prisoner has a severe mental disorder, or (ii) that the disorder is not in remission or cannot be kept in remission without treatment, or (iii) that the severe mental disorder was a cause of, or aggravated, the prisoner's criminal behavior, and a chief psychiatrist has certified the prisoner to the Board of Prison Terms pursuant to this paragraph, then the Board of Prison Terms shall order a further examination by two independent professionals . . . ." Section 2962, former subdivision (d)(3) provided: "Only if both independent professionals who evaluate the prisoner pursuant to [subdivision (d)(2)] concur with the chief psychiatrist's certification of the issues described in [subdivision (d)(2)], shall this subdivision be applicable to the prisoner. . . ."

If dissatisfied with the results of the hearing, the prisoner may petition the superior court for a hearing to determine whether he or she meets the criteria of section 2962.[5] (§ 2966, subd. (b).)

If the prisoner's severe mental disorder is put into remission during the parole period, and can be kept in remission, the Department of Mental Health must discontinue treating the parolee. (§ 2968.) If, however, the parolee's severe mental disorder is not in remission at the end of the parole period or cannot be kept in remission without treatment, the MDO statutes provide procedures for extending the treatment for one year beyond the final parole termination date. (§ 2970; *People* v. *Kirkland, supra,* 24 Cal.App.4th at p. 902.)[6] These petitions to extend involuntary treatment are subject to specific time requirements, set forth in part II, below, that are the subject of this appeal.

After the section 2970 petition has been filed, the court is required to conduct a civil hearing on the petition. (§ 2972, subd. (a).) Section 2972 provides that defendant has a right to a jury trial, both civil and criminal discovery rules apply, representation for the People is by the district attorney, the public defender is appointed if the patient is indigent, and the jury's verdict must be unanimous and based upon proof beyond a reasonable doubt. (§ 2972, subds. (a) and (b).) If the jury (or the court, if jury trial has been waived) makes the necessary findings, the court shall order the patient recommitted for a period of one year. (§ 2972, subd. (c).)

The treatment facility has an affirmative obligation to provide treatment for the underlying causes of the person's mental disorder (§ 2972, subd. (f)). A new petition may be filed each year in accordance with statutory provisions, so long as the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and as a result the patient still presents a substantial danger of physical harm to others. (§ 2972, subd. (e).)

### B. *Defendant's Contentions*

In this appeal, defendant seeks reversal of the trial court's order extending his commitment pursuant to section 2970. He argues, as he did before the trial court in his motion to dismiss, that the trial court lacked jurisdiction to

[5]The hearing in the superior court "shall be a civil hearing," in which both the rules of criminal discovery and civil discovery apply, trial is by jury unless waived, and a unanimous verdict of proof beyond a reasonable doubt is required. (§ 2966, subds. (a) and (b).)

[6]Likewise, if the offender refuses to agree to treatment as a condition of parole, and thus remains in prison for the parole period, the state may seek involuntary treatment for one year after the offender's scheduled release date from prison. (§ 2970; *People* v. *Kirkland, supra,* 24 Cal.App.4th 891, 904.)

order an extension of his commitment because certain procedural requirements had not been met: the 180-day rule set forth in section 2970, and the 30-day rule of section 2972.

## C.   *180-Day Requirement*

### 1.   *Statutory Provision*

Section 2970 provides: "Not later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962, unless good cause is shown for the reduction of that 180-day period, if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee, or the community program director in charge of the parolee's outpatient program, or the Director of Corrections, shall submit to the district attorney . . . his or her written evaluation on remission. . . . [¶] The district attorney may then file a petition with the superior court for continued involuntary treatment for one year. . . ."

In this case, that 180-day deadline passed in March 1997. The letter recommending continued treatment was issued on July 30, 1997, only 50 days prior to defendant's scheduled release date of September 18, 1997. As at trial, the People concede that the letter was not sent 180 days prior to defendant's parole termination date, but argue that good cause was shown for reduction of the 180-day period.

### 2.   *Good Cause for Delay*

The good cause asserted by the People essentially consists of the overlap in timing of the initial designation of defendant as an MDO during the parole period (pursuant to section 2962) and the section 2970 proceedings. The relevant events in this case were the evaluations beginning in March of 1997, resulting in defendant's classification as an MDO under section 2962 on May 7, 1997; defendant's request for a hearing regarding his MDO status to the Board of Prison Terms, which (after additional evaluations) affirmed the commitment on July 25, 1997; and the letter of the medical director at Atascadero recommending continued treatment under section 2970 five days later, on July 30, 1997.

The People argue that (1) the section 2962 evaluations were timely (because section 2962 provides only that defendant must be evaluated "prior to release on parole"), (2) that defendant had to be classified for treatment

under section 2962 before his treatment could be continued under section 2970, and (3) that the hospital issued the letter as promptly as possible under the circumstances. According to the People, "it would have been impossible for the medical director at Atascadero to issue a letter stating that [defendant] had a severe mental disorder not in remission if the fact of that severe mental disorder was still in dispute." The trial court rejected this argument, stating, "I find that there was nothing precluding the evaluation of [defendant] and the remission of the evaluation by March 18th."

After consideration of the statutes in question, we agree with the trial court that the People have failed to show good cause for the delay.[7] The People apparently seek a holding that the 180-day period provided in section 2970 may be reduced whenever section 2962 proceedings are continuing at the time of the 180-day deadline. It appears to us, however, that such a rule would present numerous problems for defendants (who are entitled to contest their section 2962 designation *and* to seek release as of their parole termination date) and for the People (who should not be required to wait until the end of defendant's possible challenges to his status before taking a position regarding continued treatment under section 2970 and preparing the petition). We are persuaded that a letter stating the opinion of the professional designated in section 2970 could have been sent to the district attorney while defendant was contesting his MDO status. Consequently, the terms of section 2970 (requiring a letter 180 days prior to the termination of parole or good cause for reduction of the 180-day period) were violated here.

## D. *Consequences of Failure to Meet 180-day Requirement*

Defendant contends that the 180-day requirement of section 2970 is mandatory (or "jurisdictional"), and that a violation without good cause automatically requires the court to dismiss the petition. The People argue that the 180-day requirement "should be construed as directory, thus allowing a court to proceed with a petition even if good cause for delay is not shown." We must therefore consider whether the 180-day rule of section 2970 is mandatory (resulting in automatic dismissal) or directory. We agree with the trial court that it is directory.

With respect to time limit statutes, the general rule is that "requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly

---

[7]Although findings regarding good cause are generally reviewed for abuse of discretion (see *People* v. *Kirkland, supra,* 24 Cal.App.4th at pp. 909, 915-916), the People argue that their good cause argument here presents an issue of statutory interpretation which should be reviewed de novo, citing *People* v. *Taylor* (1992) 6 Cal.App.4th 1084, 1090-1091 [8 Cal.Rptr.2d 439]. Under either standard, we believe the trial court's finding here was correct.

expressed. . . . In some cases focus has been directed at the likely conse-quences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment." (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365]; see *People* v. *Curtis* (1986) 177 Cal.App.3d 982, 988 [223 Cal.Rptr. 397].)

■■■ Here, the statute itself contains a clear and unequivocal statement of its purpose. Section 2960 provides: "The Legislature finds that there are prisoners who have a treatable, severe mental disorder that was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated. Secondly, the Legislature finds that if the severe mental disorders of those prisoners are not in remission or cannot be kept in remission at the time of their parole or upon termination of parole, there is a danger to society, and the state has a compelling interest in protecting the public. Thirdly, the Legislature finds that in order to protect the public from those persons it is necessary to provide mental health treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission."

The fundamental purpose of the MDO provisions is thus to protect the public from dangerous mentally disordered prisoners. This purpose would not be furthered by a rule that the court absolutely loses jurisdiction when the 180-day rule of section 2970 is violated. In the context of this statute, we believe the purpose of the 180-day rule is to provide reasonable assurance that recommitment (if appropriate) may be addressed before a prisoner's scheduled release, so that those mentally disordered prisoners who still pose a danger to others will not be released from custody.

We do not believe the Legislature intended that a violation of the 180-day rule should result in the automatic release of mentally disordered prisoners from further supervision or treatment. As the court noted regarding a similar provision in *People* v. *Curtis*, *supra*, 177 Cal.App.3d 982, "[i]t would be anomalous to construe a statute designed to prevent the release of dangerous people into the community in such a way that an inconsequential violation of the time requirement would allow the very release the statute is designed to prevent." (*Id.* at p. 989.) Here, construing the 180-day rule as jurisdictional would hinder the clear statutory purpose, and could also disserve those (like defendant here) who require treatment. On the other hand, finding the 180-day rule directory will mean that the court's order for continued treat-ment will be given effect.

Other cases interpreting analogous statutes have construed similar dead-lines as directory. For example, courts held that the time deadlines in former

section 6316.2 of the Welfare and Institutions Code (extending the commitment of mentally disordered sex offenders) were directory. (See *People* v. *Curtis, supra,* 177 Cal.App.3d at pp. 989-990 [30-day deadline, former § 6316.2]; *People* v. *Dias* (1985) 170 Cal.App.3d 756, 762 [216 Cal.Rptr. 295] [90- and 30-day deadlines, former § 6316.2].)

Another similar statute, section 1026.5, allowing for extended commitment of defendants found not guilty by reason of insanity, specifically provides that "[t]he time limits of this section are not jurisdictional." (§ 1026.5, subd. (a)(2); *In re Johns* (1981) 119 Cal.App.3d 577, 580 [175 Cal.Rptr. 443].) Courts have consistently found the deadlines of section 1026.5 to be directory rather than jurisdictional. (See *People* v. *Mord* (1988) 197 Cal.App.3d 1090, 1116-1117 [243 Cal.Rptr. 403] [180-day deadline of § 1026.5]; *People* v. *Dougherty* (1983) 143 Cal.App.3d 245, 247 [191 Cal.Rptr. 668] [90- and 30-day deadlines, § 1026.5]; *People* v. *Echols* (1982) 138 Cal.App.3d 838, 841-842 [188 Cal.Rptr. 328] [90-day deadline, § 1026.5]; *In re Johns, supra,* 119 Cal.App.3d at p. 580 [90- and 30-day deadlines, § 1026.5].)[8] Although section 2970 does not specifically state that its 180-day rule is directory, we find no indication in the statute or its legislative history that the Legislature intended a different result, especially given the rule consistently followed by the courts that such statutes are directory unless a contrary intent is expressed.

In summary, on the basis of the clear legislative purpose of section 2970, the general rules for interpreting such statutes, and guidance from cases interpreting statutes with similar deadlines and purposes, we hold that the 180-day rule of section 2970 is directory. We emphasize that this holding in no way diminishes the responsibility of hospital or corrections authorities to ensure, for the protection of both society and those committed, that evaluations regarding MDO's be handled according to the statutory deadlines. "'We are confident . . . this opinion will increase the awareness of such officials of their duties and lead to increased compliance with the statutory requirements.'" (*People* v. *Smith* (1990) 224 Cal.App.3d 1389, 1396 [274 Cal.Rptr. 591], quoting *People* v. *Harner* (1989) 213 Cal.App.3d 1400, 1410 [262 Cal.Rptr. 422].)

---

[8]Some cases concerning section 1026.5 have concluded that the trial court loses jurisdiction if the petition to extend commitment is not *filed* before the defendant's release date. (See, e.g., *People* v. *Saville* (1982) 138 Cal.App.3d 970, 974 [188 Cal.Rptr. 376]; *People* v. *Pacini* (1981) 120 Cal.App.3d 877, 889-892 [174 Cal.Rptr. 820]; but see *People* v. *Minahen* (1986) 179 Cal.App.3d 180, 187-189 [224 Cal.Rptr. 460] [finding that the court retains jurisdiction so long as there is good cause for the delay and procedural due process is afforded to the defendant].) These cases are not similar to this case, in which the petition was filed 48 days *prior* to defendant's parole termination date.

### E. *Due Process Considerations Regarding 180-day Rule*

Because we hold that the 180-day time requirement of section 2970 is directory, the section 2970 petition here is not automatically invalid. ▇ Therefore, in addition to the statutory deadlines, we consider whether defendant's due process rights were violated by the delay. Considerations of due process require an inquiry into whether defendant was harmed by the delay. (*In re Johns, supra,* 119 Cal.App.3d at p. 581; *People v. Dougherty, supra,* 143 Cal.App.3d at p. 247.)

In conducting such an analysis under section 2970 and similar statutes, courts have adopted the due process test used under both federal and state speedy trial decisions, which involves a balancing of any prejudicial effect of the delay against the justification for the delay. (*People v. Kirkland, supra,* 24 Cal.App.4th at p. 910; *People v. Dougherty, supra,* 143 Cal.App.3d at pp. 247-248; *In re Johns, supra,* 119 Cal.App.3d at p. 581.) Except where there has been an extended delay, prejudice will not be presumed, and it will be incumbent upon the defendant to demonstrate actual prejudice. (*People v. Kirkland, supra,* 24 Cal.App.4th at p. 910; *In re Johns, supra,* 119 Cal.App.3d at p. 581.) If the defendant fails to demonstrate prejudice, the court need not consider the reasons for the delay. (*Scherling v. Superior Court* (1978) 22 Cal.3d 493, 506-507 [149 Cal.Rptr. 597, 585 P.2d 219]; *In re Johns, supra,* 119 Cal.App.3d at p. 581.)

Defendant makes essentially three claims of prejudice regarding the violation of the 180-day deadline. He contends he suffered prejudice (1) because the lack of an evaluation letter led him to believe he would be released on September 18, 1997, so he did not appeal the section 2962 administrative finding to the superior court; (2) because he had insufficient time to prepare his defense; and (3) because his trial was not concluded before his parole termination date.[9]

Defendant's first argument, that the late evaluation letter caused him to abandon administrative hearing rights, is without merit. It is true that after his unsuccessful hearing before the Board of Prison Terms regarding whether he met the criteria of section 2962, defendant had a right to petition the superior court for a hearing on this issue (§ 2966, subd. (b)), and that he failed to exercise this right. His suggestion that this decision was based upon the medical director's failure to file a commitment letter, however, is unsubstantiated. Under section 2970, defendant is not entitled to notice of a medical director's decision to recommend continued treatment to the district

---

[9]For purposes of this analysis, as defendant suggests, we have evaluated prejudice without regard to the fact that defendant later lost on the section 2970 petition.

attorney. (See §§ 2970 and 2972, subd. (a).) Consequently, defendant could not fairly rely upon the presence or absence of such a letter in making his decision to abandon his right to a superior court hearing under section 2966. Defendant's failure to challenge the Board of Prison Term's decision pursuant to section 2966 must be deemed a tactical decision separate from any section 2970 proceedings.

On this same issue of abandonment of administrative hearing rights, defendant makes a related argument that after the late evaluation letter it would have been "a practical impossibility" to litigate both a section 2966 hearing and a section 2972 trial within a 50- to 60-day period. This argument is also without merit. The two proceedings both involved the same subject matter—defendant's mental condition—and the court trial on the section 2972 petition took only one day to complete. It is unclear why defendant would be unable to pursue both proceedings. Moreover, if defendant actually found it impossible to pursue them, both sections 2966 and 2972 allow defendant to waive the statutory time limits, or the court to extend them upon a showing of good cause. (§§ 2966, subd. (b), 2972, subd. (a).) Under these circumstances, defendant cannot demonstrate that his ability to pursue a section 2966 hearing was affected by the section 2970 proceedings.

Defendant's second claim of prejudice is that the untimely commitment letter rendered him unable to prepare his defense in the section 2972 proceeding. As the court noted in *People* v. *Kirkland, supra,* 24 Cal.App.4th at page 916, the defendant in a continued treatment proceeding has a due process right to a reasonable amount of time to prepare for trial.[10] Defendant had the burden to demonstrate that the time afforded for trial preparation was unreasonable. (*Id.* at p. 916.) Here, defense counsel was appointed on August 13, 1997, and trial commenced 29 days later, on September 11, 1997. The record contains no indication that defendant was not available to meet with his counsel as of the time of her appointment or shortly thereafter. Counsel was allowed continuances before trial and adequate time to brief the motion to dismiss. At no time during the trial did counsel state that she was unprepared or unable to proceed, and the record gives no indication that she was unprepared for witness examination or any other aspect of the trial. Defendant has simply shown no facts demonstrating any prejudice to his trial preparation. "The showing of actual prejudice which the law requires must

---

[10] In *People* v. *Kirkland, supra,* 24 Cal.App.4th 891, the court specifically rejected a defendant's argument that the 180-day deadline was enacted to provide the defendant a specific time for trial preparation. "The 180-day deadline only refers to the time appropriate mental health officials should submit their remission evaluation to the district attorney. It ensures the district attorney adequate time to decide whether to file the petition, file it, and to prepare for trial. It does not ensure the defendant any particular amount of time to prepare." (*Id.* at p. 911.)

be supported by particular facts and not . . . by bare conclusionary statements." (*Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 442 [121 Cal.Rptr. 457, 535 P.2d 321].)

Finally, defendant claims that he was denied due process because he was held for 12 days beyond his release date without a determination on the merits of the section 2970 petition. Our examination of the record, however, reveals that this extension of the trial beyond defendant's scheduled release date was due to his own counsel's requested continuances, not to the People's failure to comply with any statutory deadlines. The trial was set to commence on September 11, 1997, and the deputy district attorney stated that she was prepared to proceed with witnesses on that date. Ultimately, the trial on the merits was concluded in one day. Except for the continuance requested by defense counsel, the trial would have been completed before defendant's release date. Although the trial court was within its discretion to grant the continuance requested by defense counsel, defendant may not now claim prejudice from this same delay requested on his behalf. To allow otherwise would allow defendants to request numerous continuances for good cause, pushing the trial past the release date, and then claim prejudice from the continued trial.

In summary, we agree with the trial court that defendant suffered no prejudice or deprivation of due process from the violation of the 180-day rule in this case.

F.  *The 30-day Rule for Commencement of Trial*

■  Defendant also claims that the 30-day rule of section 2972 was violated in this case. Section 2972, subdivision (a) provides: "The court shall conduct a hearing on the petition under Section 2970 for continued treatment. The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial. . . . [¶] . . . The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown."

Here, the trial commenced on September 11, 1997, seven days before defendant's scheduled release date. The trial court found good cause for the failure to meet section 2972's 30-day rule. We review the trial court's finding for abuse of discretion. (*People* v. *Kirkland, supra,* 24 Cal.App.4th at pp. 909, 915-916; see *People* v. *Szeto* (1981) 29 Cal.3d 20, 29 [171 Cal.Rptr. 652, 623 P.2d 213] [trial court's finding of good cause for delay in connection with defendant's speedy trial claim reviewed under abuse of discretion standard].)

The record shows that after the medical director at Atascadero State Hospital issued a commitment letter pursuant to section 2970 on July 30, 1997, the district attorney made every effort to bring the matter to trial in a timely manner. The district attorney filed the section 2970 petition on August 1, 1997, two days after issuance of the commitment letter. The district attorney also issued expedited subpoenas to assist defense counsel in obtaining the documents necessary to resolve the motion to dismiss.

The district attorney was ready to proceed with trial on September 11, 1997, seven days prior to defendant's release date. At that hearing, defense counsel confirmed that the district attorney had made every effort to bring the trial to a speedy resolution. On these facts, the trial court did not abuse its discretion in finding good cause.

Defendant argues that the trial court found good cause for violation of the 30-day rule simply on the basis that the trial occurred as soon as possible in light of the earlier violation of the 180-day rule, and that this finding "eviscerates the statute." We disagree. The trial court did not adopt an automatic rule that the late evaluation excused the late trial. Although the trial court considered the timing of the evaluation (which the district attorney did not cause or control), the court was also aware of the diligent efforts by the district attorney to bring the matter to trial, the preparation time afforded to the parties, the continuances requested by the defense and their factual circumstances, and the actual trial date and proceedings. All of these factors were properly considered. Because good cause is a highly factual determination in each case, we decline to adopt defendant's suggestion that a late evaluation without good cause (violating the 180-day rule) automatically precludes a finding of good cause under the 30-day rule.

Finally, we reject defendant's argument that his due process rights were violated by the late commencement of trial, because he suffered no prejudice as a result. As explained in part II.E above, defendant had adequate time to prepare and present his defense, and the fact that trial continued past defendant's release date was due to requests by defense counsel rather than to the late commencement of trial.

G. *Mootness*

Because defendant's one-year recommitment expired on September 18, 1998, it appeared that questions regarding this recommitment had become moot while this appeal was pending. At oral argument, however, counsel for defendant stated that defendant's commitment has once again been extended for an additional year. We conclude that the appeal is not moot because our

decision may still affect the lower court's right to continue jurisdiction under the original commitment as well as the recommitment. (See *People* v. *Mord*, *supra*, 197 Cal.App.3d at p. 1115.)

## DISPOSITION

The trial court's order filed October 3, 1997, extending defendant's commitment until September 18, 1998, is affirmed.

Premo, J., and Elia, J., concurred. continued.

A petition for a rehearing was denied March 22, 1999, and appellant's petition for review by the Supreme Court was denied May 19, 1999. Kennard, J., was of the opinion that the petition should be gratned.