William Edward Preston
MAY, Petitioner,

v.

Melvin HUNTER, Respondent.

No. CV 05–6026–RGK(RC).

United States District Court,
C.D. California.

Aug. 30, 2006.

The petitioner is appearing pro se.

Steven D. Matthews, Deputy Attorney General, Office of Attorney General of the

State of California, Los Angeles, CA, for The respondent.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

KLAUSNER, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the habeas corpus petition and dismissing the action.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On May 7, 2002, in Sonoma County Superior Court case no. MCR397173, petitioner pleaded no contest to, and was convicted of, one count of making terrorist threats under California Penal Code ("P.C.") § 422, and petitioner admitted having suffered a prior conviction within the meaning of P.C. 667.5(b). Answer, Exh. A at 76, 82. The petitioner was sentenced to the total term of three years in state prison. *Id.* at 77, 79, 83.

On February 24, 2004, the California Board of Prison Terms ("Board")[1] held a hearing and certified petitioner as a mentally disordered offender ("MDO") within the meaning of P.C. § 2962.[2] Answer,

---

1. Effective July 1, 2005, the Board of Prison Terms was abolished and replaced with the Board of Parole Hearings. P.C. § 5075.

2. P.C. § 2962, which is part of California's Mentally Disordered Offender's Act ("the Act"), provides, in pertinent part:

   As a condition of parole, a prisoner who meets the following criteria shall be required to be treated by the State Department of Mental Health, and the State Department of Mental Health shall provide the necessary treatment:

   (a) The prisoner has a severe mental disorder that is not in remission or cannot be kept in remission without treatment.
   \* \* \* \* \* \*
   (b) The severe mental disorder was one of the causes of or was an aggravating factor in the commission of a crime for

   which the prisoner was sentenced to prison.

   (c) The prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release.

   (d)(1) Prior to release on parole, the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health have evaluated the prisoner at a facility of the Department of Corrections, and a chief psychiatrist of the Department of Corrections has certified to the Board of Prison Terms that the prisoner has a severe mental disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, that the

Exh. B at 108. On March 18, 2004, petitioner filed a petition under P.C. § 2966 in San Luis Obispo County Superior Court case no. F355164 for appointment of counsel and a hearing to review the Board's certification of him as an MDO. Answer, Exh. A at 21–22. On May 18, 2004, the court found petitioner is an MDO within the meaning of P.C. § 2962. *Id.* at 26–27.

Petitioner appealed the decision to the California Court of Appeal, Answer, Exh. A at 28, which affirmed the Judgment in an unpublished opinion filed March 16, 2005. *Id.*, Exh. F. On April 19, 2005, petitioner filed a petition for review in the California Supreme Court, which denied the petition on June 8, 2005. *Id.*, Exhs. G–H.

## II

In upholding petitioner's certification as an MDO, the California Court of Appeal made the following findings of fact regarding the underlying circumstances of petitioner's offense and MDO certification:[3] On June 20, 2002, petitioner was convicted of making terrorist threats (P.C. § 422) after he entered his girlfriend's bedroom in the middle of the night and threatened to plunge a knife eighteen inches into her heart.

After the Board certified petitioner is an MDO, petitioner filed a petition challenging the Board's determination and waived jury. Petitioner's treating physician, Dr. Jay Seastrunk, testified that petitioner suffered from a severe mental disorder that was not in remission and that petitioner met all the MDO criteria. The trial court received four psychological reports, three of which concluded that the severe mental disorder was not in remission. Petitioner testified that he suffers from "schizophrenia, paranoia," the symptoms of which includes auditory hallucinations.

## III

On June 29, 2005, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court for the Northern District of California, which transferred the matter to this court on August 17, 2005. On November 18, 2005, respondent filed a motion to dismiss the petition for lack of personal jurisdiction due to petitioner's failure to name the custodian of the institution where he is confined, and on November 21, 2005, the Court granted respondent's motion with leave to amend.

On January 5, 2006, petitioner filed an amended petition naming the proper respondent, and on March 30, 2006, respon-

---

prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day, and that by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others. . . .

(2) If the professionals doing the evaluation pursuant to paragraph (1) do not concur that (A) the prisoner has a severe mental disorder, (B) that the disorder is not in remission or cannot be kept in remission without treatment, or (C) that the severe mental disorder was a cause of, or aggravated, the prisoner's criminal behavior, and a chief psychiatrist has cer-

tified the prisoner to the Board of Prison Terms pursuant to this paragraph, then the Board of Prison Terms shall order a further examination by two independent professionals, as provided for in Section 2978.

(3) Only if both independent professionals who evaluate the prisoner pursuant to paragraph (2) concur with the chief psychiatrist's certification of the issues described in paragraph (2), shall this subdivision be applicable to the prisoner.

.   .   .   .   .

P.C. § 2962.

**3.** Answer, Exh. F at 197–98.

dent filed his answer. Petitioner did not file a reply or traverse.

The amended petition, although rambling, raises the following claim: The trial court erred in finding petitioner is not compliant with prescribed medications; thus, there was insufficient evidence to support the court finding petitioner is an MDO. In particular, petitioner challenges the findings under P.C. 2962(a) that he is medication non-compliant, is not following his treatment program, and his mental illness is not in remission. Amended Petition at 5–6.

## IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal habeas court shall presume the state court's factual findings are correct, and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court addressed petitioner's claim on the merits when it denied his petition for review without comment. *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000), *cert. denied,* 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Thus, in addressing petitioner's claim, this Court will consider the California Court of Appeal's reasoned opinion denying that claim. *Yee v. Duncan,* 441 F.3d 851, 856 (9th Cir.2006); *Garcia v. Carey,* 395 F.3d 1099, 1103 n. 7 (9th Cir.2005).

## V

■ To review the sufficiency of the evidence in a habeas corpus proceeding, the reviewing court must determine whether " 'any rational trier of fact could have found the essential elements of the [conduct] beyond a reasonable doubt.' " *Lewis v. Jeffers,* 497 U.S. 764, 781, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990) (citation omitted); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). All evidence must be considered in the light most favorable to the prosecution. *Lewis,* 497 U.S. at 782, 110 S.Ct. at 3103 (citation omitted); *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Further, if the facts support conflicting inferences, reviewing courts "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Turner v. Calderon*, 281 F.3d 851, 882 (9th Cir.2002). These standards are applied to the substantive elements of the state law. *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir.), *cert. denied*, 513 U.S. 860, 115 S.Ct. 170, 130 L.Ed.2d 107 (1994). Furthermore, after AEDPA, federal courts "must apply the standards of Jackson with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir.2005) (citing 28 U.S.C. § 2254(d)), *cert. denied*, —— U.S. ——, 126 S.Ct. 1142, 163 L.Ed.2d 1000 (2006).

The Mentally Disordered Offenders Act ("the Act"), P.C. §§ 2960 et seq. was enacted in 1985 as a civil commitment scheme directed at state prisoners with severe mental disorders who are about to be released on parole. *In re Qawi*, 32 Cal.4th 1, 9, 7 Cal.Rptr.3d 780, 783, 81 P.3d 224 (2004); *People v. Martin*, 127 Cal.App.4th 970, 973, 26 Cal.Rptr.3d 174 (2005). The Act "reflects the [California] Legislature's determination that some prisoners have a treatable, severe mental disorder that caused or was an aggravating factor in the crime for which they were committed, that the state has a compelling interest to protect the public from those prisoners who are not in remission, and that in order to protect the public, it is necessary to provide those prisoners continuing mental health treatment until the underlying condition can be kept in remission." *McQuarters v. Superior Court*, 138 Cal.App.4th 1357, 1362, 42 Cal.Rptr.3d 292 (2006); P.C. § 2960. As such, the Act "requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment during and after the termination of their parole until their mental disorder can be kept in remission." *In re*

*Qawi*, 32 Cal.4th at 9, 7 Cal.Rptr.3d at 783, 81 P.3d 224; *People v. Fernandez*, 70 Cal. App.4th 117, 125, 82 Cal.Rptr.2d 469 (1999). Treatment must be on an inpatient basis unless the State Department of Mental Health certifies to the Board that "there is reasonable cause to believe the parolee can be safely and effectively treated on an outpatient basis." P.C. § 2964(a).

An offender is eligible for commitment under the Act if all of the following six factors are met: (1) the prisoner has a severe mental disorder; (2) the prisoner used force or violence in committing the underlying offense; (3) the prisoner had a disorder which caused or was an aggravating factor in committing the offense; (4) the disorder is not in remission or cannot be kept in remission without treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year before being paroled; and (6) because of the disorder, the prisoner poses a serious threat of physical harm to other people. P.C. § 2962; *People v. Sheek*, 122 Cal.App.4th 1606, 1610, 19 Cal.Rptr.3d 737 (2004); *People v. Francis*, 98 Cal.App.4th 873, 876–77, 120 Cal.Rptr.2d 90 (2002). A "severe mental disorder" is "an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely"; however, a " 'severe mental disorder' ... does not include a personality or adjustment disorder, epilepsy, mental retardation or other developmental disabilities, or addiction to or abuse of intoxicating substances." P.C. § 2962(a); *Sheek*, 122 Cal. App.4th at 1610, 19 Cal.Rptr.3d 737. "Remission" means "a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psycho-

tropic medication or psychosocial support." P.C. § 2962(a);[4] *Sheek,* 122 Cal.App.4th at 1610, 19 Cal.Rptr.3d 737.

"Before a prisoner may be classified as an MDO under section 2962, both the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health must evaluate the prisoner, and a chief psychiatrist of the Department of Corrections must then certify to the [Board] that the prisoner meets the statutory criteria...." *Fernandez,* 70 Cal. App.4th at 125, 82 Cal.Rptr.2d 469; P.C. § 2962(d)(1). If the chief psychiatrist certifies the prisoner to the Board even though the two evaluating professionals "do not concur that (A) the prisoner has a severe mental disorder, (B) that the disorder is not in remission or cannot be kept in remission without treatment, or (C) that the severe mental disorder was a cause of, or aggravated, the prisoner's criminal behavior," then the Board is required to "order a further examination by two independent professionals," who must both concur with the chief psychiatrist's certification for the prisoner to be considered an MDO. P.C. §§ 2962(d)(2)-(3), 2978.

A prisoner has the right to a hearing before the Board to contest a finding he meets the requirements of P.C. § 2962, and the certifying party has the burden of demonstrating the prisoner is an MDO. P.C. § 2966(a); *Fernandez,* 70 Cal.App.4th at 125, 82 Cal.Rptr.2d 469. "If dissatisfied with the results of the hearing, the prisoner may petition the superior court for a hearing to determine whether he or she [met] the criteria" of P.C. § 2962 as of the date of the Board hearing. *Fernandez,* 70 Cal.App.4th at 125–26, 82 Cal.Rptr.2d 469; P.C. § 2966(b). The prisoner is entitled to an attorney before the Superior Court and to a jury trial with a unanimous verdict based on proof beyond a reasonable doubt. P.C. § 2966(b); *Sheek,* 122 Cal.App.4th at 1610–11, 19 Cal.Rptr.3d 737.

"If the prisoner's severe mental disorder is put into remission during the parole period, and can be kept in remission, the Department of Mental Health must discontinue treating the parolee." *Fernandez,* 70 Cal.App.4th at 126, 82 Cal.Rptr.2d 469; P.C. § 2968. "If, however, the parolee's severe mental disorder is not in remission at the end of the parole period or cannot be kept in remission without treatment, the [Act] provide[s] for extending the treatment for one year beyond the final parole termination date." *Fernandez,* 70 Cal.App.4th at 126, 82 Cal.Rptr.2d 469; P.C. § 2970.

In affirming the Superior Court, the California Court of Appeal made the following findings:

At issue is factor four [of P.C. § 2962]. [Petitioner] claims that his severe mental disorder is in remission because he is asymptomatic. The MDO Act defines "remission" to mean "a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support." [¶] Here auditory hallucinations are an overt sign and symptom of [petitioner]'s severe mental disorder. Doctor J.V. Ruffman reported that [petitioner] continued to experience psychotic

---

4. The Act further provides:

A person "cannot be kept in remission without treatment" if during the year prior to the question being before the Board of Prison Terms or a trial court, he or she has been in remission and he or she has been physically violent, except in self-defense, or he or she has made a serious threat of substantial physical harm upon the person of another so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family, or he or she has intentionally caused property damage, or he or she has not voluntarily followed the treatment plan. P.C. § 2962(a).

symptoms and auditory hallucinations "even with good treatment compliance." [¶] [Petitioner] complains that his treating psychiatrist, Doctor Seastrunk, wrote a March 24, 2004 report stating that [petitioner] was in remission and asymptomatic. The report, however, was written a month **after** the [Board] hearing and is not here controlling.[fn2]

[fn2] [Petitioner] states that the doctor wrote the report for the [Board] hearing. Doctor Seastrunk was [petitioner]'s treating psychiatrist from January 30, 2004 to April 7, 2004. The [Board] hearing was February 24, 2004. The doctor did not testify at the [Board] hearing and wrote the report in March 2004 for a placement hearing.

"At a section 2966 hearing, the trier of fact considers whether the prisoner met all the MDO criteria *as of the date of the BPT certification hearing.* The trier of fact is provided a snapshot view of the prisoner's mental status. Subsequent evidence concerning a change or improvement in the prisoner's mental condition is not relevant." [¶] Doctor Seastrunk stated that he had only treated [petitioner] for two months before dictating the report. The doctor later discovered that the psychosis "comes and goes and re-emerges relatively consistently. . . ." [Petitioner]'s psychiatric history, which date[s] back to 1991, indicate[s] that numerous episodes of re-emergence were associated with violence and inappropriate sexual behavior. Doctor Seastrunk stated: "Historically, this man has had periods where his signs and symptoms are not obvious, yet they emerge subsequently, and this is characteristic of the kind of mental illness that he has. It is like you have an illness that goes below the surface of the water and you can't see it, and then it emerges like an iceberg that goes below the surface, and then it comes up. The

illness is still present and is there and there is a potential danger, but it is not always observable." [¶] Doctor Seastrunk opined that the severe mental disorder was not in remission on the date of the [Board] hearing. The doctor concluded that [petitioner]'s symptoms were "below the surface," but were not controlled by medication and support. [¶] [Petitioner] argues that a "below the surface" symptom is not an overt symptom and that the severe mental disorder was in remission as a matter of law. The trial court stated that it is "a close case" and that "[b]asically, I am relying on Dr. Seastrunk's opinion." It did not fault the doctor for changing his opinion given [petitioner]'s symptoms and psychiatric history. The trial court found: "It is a very unusual mental illness and, as Dr. Seastruck said, it is not the usual schizophrenia. . . ." [¶] The trial court reasonably concluded that the severe mental disorder was not in remission or could not be kept in remission without treatment. Doctor Seastrunk was in the best position to diagnose [petitioner] because he was the treating psychiatrist. Doctor Seastrunk's expert opinion was corroborated by the reports of four evaluators: Doctors J.V. Ruffman, Barbara P. Stark, Robert E. Record, and John Hupka. [¶] Doctor Ruffman reported that the severe mental disorder [i]s not in remission and that [petitioner] continue[s] to experience psychotic symptoms even with good treatment compliance. Doctor Stark reported that the severe mental disorder [i]s not in remission, that [petitioner] suffer[s] significant thought disorders, and that [petitioner] ha[s] not followed the treatment plan and [i]s "medication non-compliant." Doctor Record reported that [petitioner] [i]s not in remission, that he ha[s] not been compliant with treatment, and that [petitioner] "told me that he was not

taking psychotropic medication..." [¶] Doctor Hupka opined that the severe mental disorder [i]s in remission and that the medications and psychosocial support [a]re controlling [petitioner]'s psychotic symptoms. Doctor Hupka's report, however, stated that [petitioner] "continues to experience 'voices.' "

Answer, Exh. F at 198–200 (citations omitted; emphasis added and in original).

■ Petitioner challenges the sufficiency of the evidence supporting the court's determination that he is an MDO within the meaning of P.C. § 2962. As an initial matter, the Court notes petitioner has not produced any evidence, much less "clear and convincing evidence," to rebut the California Court of Appeal's factual determinations. Thus, the Court accepts them as true.

Petitioner focuses his challenge on factor four of P.C. § 2962, i.e., the disorder is not in remission or cannot be kept in remission without treatment.[5] Specifically, petitioner claims there is insufficient evidence to demonstrate his severe mental disorder is not in remission or not capable of being kept in remission, and that he was not medication-compliant. Petitioner's challenge is without merit.

The evidence clearly shows that petitioner's mental disorder is not in remission **and** that the disorder is not capable of being kept in remission absent treatment.[6] Answer Exh. A at 47. Specifically, Drs. Record, Ruffman, Seastrunk and Stark all opined petitioner's severe mental disorder is not in remission, Answer, Exhs. A–B at 53, 61, 69 and 112–14, and the contrary opinion of Dr. Hupka does not undermine their views. *See,* e.g., *People v. Valdez,* 89 Cal.App.4th 1013, 1017–18, 107 Cal.Rptr.2d 783 (2001) (opinion of qualified mental health professional provides sufficient evidence to support MDO finding); *People v. Clark,* 82 Cal.App.4th 1072, 1083, 98 Cal. Rptr.2d 767 (2000) ("ample evidence" supports MDO finding with conclusions of two mental health practitioners although other mental health practitioners reached opposite conclusion).

■ "The 'cannot be kept in remission without treatment' standard can ... be found when a person 'has not voluntarily followed the treatment plan' during the year prior to the commitment or recommitment proceeding." *In re Qawi,* 32 Cal.4th at 24, 7 Cal.Rptr.3d at 796, 81 P.3d 224; P.C. § 2962(a); *see also People v. Beeson,* 99 Cal.App.4th 1393, 1399, 122 Cal. Rptr.2d 384 (2002) ("[B]y establishing that the defendant has failed to voluntarily follow his treatment plan, the [State] can show that [petitioner's] mental disorder cannot be kept in remission without treatment."). Here, Dr. Stark determined petitioner "meets the statutory definition of 'cannot be kept in remission without treatment' because during the past twelve months he has not followed his treatment plan, specifically being medication noncompliant." Answer, Exh. A at 61. Likewise, Dr. Record found petitioner "is not compliant with his medication." *Id.* at 69. Although petitioner urges that "Dr. Stark['s] and Dr. Record['s] evaluation reports ... are grossly false and very untrue reports," Amended Petition at 5, he offers no evidence to support that assertion, and such assertions do not warrant habeas cor-

---

**5.** To the extent petitioner's amended habeas corpus petition can be read to claim there is insufficient evidence to show petitioner has a severe mental disorder, as required by factor one of P.C. § 2962, his claim is without merit. Drs. Hupka, Record, Ruffman, Seastrunk, and Stark all opine petitioner has a severe mental disorder. Answer, Exhs. A–B at 41–45, 49–51, 58–60, 64–67, and 110.

**6.** Although factor four is satisfied if the mental disorder is not in remission or capable of being kept in remission absent treatment, the evidence here establishes both.

pus relief. *Jones v. Gomez,* 66 F.3d 199, 204–05 & n. 1 (9th Cir.1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994). To the contrary, the opinions of Drs. Stark and Record constitute substantial evidence to support the determination that petitioner's mental disorder "cannot be kept in remission without treatment[.]" *Valdez,* 89 Cal. App.4th at 1017–18, 107 Cal.Rptr.2d 783; *Clark,* 82 Cal.App.4th at 1083, 98 Cal. Rptr.2d 767.

Thus, there was sufficient evidence to support the Superior Court's determination that petitioner is an MDO, and the California Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as to the findings of fact and conclusions of law; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

June 26, 2006.