Filed 4/9/13  P. v. Johnson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAMORRIS JOHNSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B239324<br>(Super. Ct. No. F468515)<br>(San Luis Obispo County) |

Lamorris Johnson appeals a judgment committing him to the California Department of Mental Health (CDMH)[1] for treatment as a mentally disordered offender (MDO) (Pen. Code, § 2962),[2] following his conviction of committing lewd acts on a child under the age of 14 (§ 288, subd. (a)).  The trial court found that Johnson received 90 days of treatment for his mental disorder because of treatment he received at a parole outpatient clinic (POC).  (§ 2962, subd. (c).)  We conclude, among other things, that:  1) POC medical services may be considered in deciding whether the prisoner received 90 days of treatment, but 2) the trial court erred by allowing the People's expert to testify

---

[1] As part of a reorganization, the California Department of Mental Health has been renamed the Department of State Hospitals.  Because the relevant statutes at the times relevant herein use the former name, we will refer to the agency by its former name.

[2] All statutory references are to the Penal Code.

on direct examination about the content of an opinion from a nontestifying expert. We reverse.

## FACTS

Johnson filed a petition to challenge a Board of Parole Hearings determination that he met the requirements for commitment as an MDO. (§ 2962.) He waived a jury trial.

At trial, Dr. Timothy Nastasi testified that Johnson suffers from pedophilia, a severe mental disorder. His pedophilia was an aggravating factor in his offense of committing lewd acts on a child. Johnson "represents a substantial danger of physical harm to others because" of his disorder. He has a "history of sexual violence," which includes "five years of sexual acts with a child between the ages of three and eight." Nastasi said, "[P]edophilia in the clinical sense never actually goes in remission. One would have to gain the skills through psychosocial treatment to be considered in remission . . . ." Johnson is not in remission. He did not complete "the sex offender program."

Nastasi said that Johnson received 90 days of treatment in the year prior to his parole release date at a POC. In rendering his opinion, he relied on an MDO evaluation report by Dr. Kathryn Anderson and statements Johnson made to her during an interview. Anderson concluded that Johnson received 90 days of treatment at the POC.

Nastasi testified that "when [Anderson] asked [Johnson] about treatment he received at the[POC], sex offender treatment, he indicated he had received frequent treatment and that he had worked on triggers and things to stay away from . . . ." Johnson also told her that he had "received treatment at the [POC] between October 5, 2010, and February 7, 2011."

Johnson's counsel objected to Nastasi's testimony about the treatment requirement. He claimed it was based on hearsay and inadequate foundation and that

2

there was an insufficient showing of the reliability of Anderson's opinion based on Johnson's statements to her. The trial court overruled the objections.

Nastasi said he reviewed an evaluation by Dr. George Grasso who concluded Johnson did not receive 90 days of treatment. He said, "I'm not sure [Grasso] even considered [POC] as counting as treatment."

Johnson testified that he told Anderson that he had "reported to the [POC] on a consistent basis throughout [his] supervised release . . . ." She did not ask him about the length of treatment and he did not tell her about the type of treatment he received at the POC. He did not use the phrase "triggers and types of thing to stay away" in the interview.

The trial court found that Johnson met the requirements to be committed as an MDO. "[T]his court believes treatment in the parole outpatient treatment should count towards the 90 days." The court found Johnson's trial testimony was not credible. It said, "[I]f I have to judge the credibility of the statements attributed to Mr. Johnson by Dr. Anderson and other testimony given in court, I'm going to accept the statements presented by Dr. Anderson in that report."

## DISCUSSION

### *90 Days of Treatment*

Johnson claims the trial court erred by considering POC outpatient services as "treatment" in determining the 90 day treatment requirement. We disagree.

The People must prove "[t]he prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." (§ 2962, subd. (c).)

Johnson contends that in a prior decision we precluded the inclusion of POC outpatient services as "treatment" for the 90-day requirement. We disagree.

In *People v. Del Valle* (2002) 100 Cal.App.4th 88, 93, we held that private outpatient services could not be included within the 90-day treatment requirement. We also said, "It is consistent with the statutory scheme that a prisoner *must receive 90 days*

3

*of inpatient treatment* before he can qualify as an MDO." (*Ibid.*, italics added.)  This language which Johnson relies on to support his argument is dicta.  In *Del Valle*, we did not reach the issue of whether POC outpatient services may be included as part of the 90-day treatment requirement.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [language in appellate decisions is not authority for issues that were never raised or decided].)

Recently in *People v. Achrem* (2013) 213 Cal.App.4th 153, we held that POC medical services fall within the type of treatment that may be considered in deciding whether the prisoner received 90 days of treatment.  Consequently, the trial court did not err by considering the POC services.

*Nastasi's Testimony about Anderson's Opinions*

Johnson contends it was error for the trial court to allow Nastasi to testify on direct examination about Anderson's opinion in her report.  We agree.

In a prior case, we held, "An expert witness may not, on direct examination, reveal the content of reports prepared or opinions expressed by nontestifying experts."  (*People v. Campos* (1995) 32 Cal.App.4th 304, 308.)  """"The reason for this is obvious.  The opportunity of cross-examining the other doctors as to the basis for their opinion, etc., is denied the party as to whom the testimony is adverse."""" (*Ibid.*)

Here the trial court erred by not sustaining the objection to Nastasi's direct testimony about Anderson's report.  This was prejudicial error.  Anderson did not testify.  The statements in Anderson's report were hearsay and they were "adverse" to Johnson's interests and his position in this case.  They involved a critical issue - the treatment that Johnson received at the POC.  Johnson was denied the opportunity to cross-examine Anderson about the basis for her opinions.  Had Johnson's objection been sustained, the People would not have been able to sustain their burden of proof in their case.  Nastasi used Anderson's report as the basis for his testimony.  He did not review the POC medical records and he was consequently unable to base his opinion on those

4

records.  Johnson's right to a fundamentally fair trial was compromised when the court permitted the prosecutor "to solicit the information" from Anderson's report during Nastasi's direct examination.  (*People v. Campos*, *supra*, 32 Cal.App.4th at p. 308.) This allowed the People to use Anderson's unsworn hearsay as a substitute for calling her as a witness at trial to prove their case.

The judgment is reversed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

5

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.