[No. B151537. Second Dist., Div. Six. July 15, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DEL VALLE, Defendant and Appellant.

**COUNSEL**

Kent Douglas Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COFFEE, J.**—James Del Valle appeals from the order of the trial court committing him to the State Department of Mental Health (DMH) as a

mentally disordered offender (MDO). (Pen. Code, §§ 2962, 2966.)[1] He argues that he did not receive 90 days of treatment within the year prior to his parole release date. Accordingly, he does not qualify as an MDO. We agree and reverse.

## FACTS

In 1999, appellant was convicted of assault with a deadly weapon and granted probation. (§ 245, subd. (a)(1).) Approximately one year later his probation was revoked and he was sentenced to state prison for a term of two years. In 2001, the Board of Prison Terms (BPT) certified him as an MDO and he was admitted to the DMH facility at Atascadero State Hospital (ASH). Appellant filed a section 2966, subdivision (b) petition challenging his certification. The trial court confirmed his status as an MDO.

## DISCUSSION

Section 2962 enumerates the criteria that must be met to qualify a prisoner as an MDO. Among other factors, the statute requires a showing "that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day." (*Id.*, subd. (d)(1).) Once a prisoner has been certified as an MDO, inpatient treatment is generally required as a condition of parole. If, however, the DMH certifies to the BPT that the parolee can be safely and effectively treated on an outpatient basis, the DMH is permitted to place the parolee in an outpatient program. (§ 2964, subd. (a).)

It is undisputed that, while in custody, appellant received 85 days of mental health treatment beginning January 3, 2001, through his parole release date on March 26, 2001. The trial court concluded he had received five days of outpatient treatment at a community clinic before his incarceration, thus the 90-day requirement was met. Appellant contends that mental health treatment must be supervised by the California Department of Corrections (CDC) and may not be provided by a private inpatient or outpatient facility.

### History of Mental Health Treatment

At appellant's MDO hearing, the trial court heard the testimony of appellant's treating doctor at ASH, Dr. Lev Iofis. It also considered the reports of two independent evaluators, Dr. Michele J. Reed and Dr. Erich Rueschenberg. Dr. Iofis diagnosed appellant as suffering from "schizophrenia, paranoid, and provisional of psychosis, N.O.S" and concluded that he qualified

[1]All statutory references are to the Penal Code.

as an MDO. Although Dr. Iofis stated that appellant had received 90 days of treatment, he also testified: "I wasn't able to form any solid, you know, picture as to how long he received treatment, let alone what kind of medication he got and so forth. So the information he provided was very sketchy, at best." Dr. Iofis also stated that he had no "confirmed indication of whether or not [appellant] had received treatment prior to January [3, 2001]."

Dr. Reed interviewed appellant on February 13, 2001, and indicated that he suffered from a severe mental disorder. She noted in her report that his earliest possible release date was March 26, 2001. Thus, it would be impossible for him to receive 90 days of treatment between the date treatment began (Jan. 3, 2001) and his release date. For this reason, she concluded that he did not qualify as an MDO.

Appellant's mental health history was recounted in detail in Dr. Reed's report. She indicated that he was admitted to the psychiatric ward at Los Angeles County University of Southern California Medical Center on November 20, 1999. He was later transferred to Gateways Mental Hospital and discharged on December 9, 1999. In August 2000, appellant's probation was revoked after he tested positive for cocaine. On September 13, 2000, he was sent to Wasco where he underwent a psychological evaluation and was found acceptable for placement in the general prison population.

On December 19, 2000, appellant was transferred to the California Men's Colony. It was there that his extensive mental health history was discovered. On January 3, 2001, he underwent a psychological evaluation. As a result, he was moved to another section of the prison for mental health treatment. Dr. Reed noted that although appellant had claimed to have received outpatient treatment in the community, he was not a reliable historian.

Dr. Rueschenberg interviewed appellant on February 20, 2001, and concluded that he met the statutory criteria. Relying on the report of a probation officer, Dr. Rueschenberg indicated that appellant received outpatient treatment at a community mental health clinic before his incarceration in September of 2000. Combined with his mental health treatment after January 3, 2001, this constituted the requisite 90 days of treatment.

Appellant told Dr. Rueschenberg that he had received mental health treatment in the Twin Towers facility in Los Angeles County Jail after his arrest (approximately Aug. 2000). He also reported a hospitalization at Los Angeles County University of Southern California Medical Center and described having received community outpatient treatment, although he

could not specify any dates. Dr. Rueschenberg cautioned, "It should be noted that Mr. DelValle [*sic*] is an unreliable historian, and it was difficult to ascertain the full extent of his mental health history in the present interview."

The trial court was of the opinion that the 90 days of treatment need not occur in a single block of time. The court noted that Dr. Reuschenberg relied on a probation officer's report in finding that appellant had received outpatient treatment from a community clinic before his incarceration. Thus, he had completed 90 days of treatment in the year before his release. The court denied appellant's petition and committed him to the DMH for an additional year.

*Statutory Interpretation*

■ Appellant argues that the trial court erred because, under section 2964, subdivision (a), a prisoner's outpatient treatment must be supervised by the CDC and may not be provided by a private facility. The People counter that the MDO statute contains no such requirement. They also contend that by concluding that the 90 days of treatment need not be consecutive, the trial court impliedly ruled that private treatment is acceptable.

■ When faced with a question of statutory construction, we must ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Estate of Griswold* (2001) 25 Cal.4th 904, 910-911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) " 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Id.* at p. 911.) We do not construe a statute in isolation, but in reference to " ' "the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].)

■ Section 2962, subdivision (d)(1) mandates that a prisoner receive 90 days of treatment for his mental disorder. To determine the type of treatment required, we look to the provisions of the statute governing mental health treatment for parolees.

Section 2964 provides that a prisoner who has been paroled is required to undergo inpatient treatment. A parolee may only receive outpatient treatment if the DMH certifies to the BPT that "there is reasonable cause to believe the

parolee can be safely and effectively treated on an outpatient basis, in which case the Board of Prison Terms shall permit the State Department of Mental Health to place the parolee in an outpatient treatment program specified by the State Department of Mental Health." (*Id.,* subd. (a).) The cost of a parolee's inpatient or outpatient treatment is borne by the state while the person is under the jurisdiction of the CDC or DMH. (§ 2976, subd. (a).) After a year of outpatient treatment, the trial court determines whether the parolee should continue in treatment, be discharged or committed to an inpatient facility. (§ 2972.1, subd. (a).)

Under the statutes, a parolee's mental health treatment is planned, approved and implemented through the CDC by the DMH. There is no suggestion that a parolee may participate in treatment that is outside the auspices of the DMH. If a parolee is required to undergo inpatient treatment, the same standard should apply to an individual who is in custody and is being evaluated for MDO status. It is consistent with the statutory scheme that a prisoner must receive 90 days of inpatient treatment before he can qualify as an MDO. We reject the People's contention that private treatment is acceptable to fulfill the 90-day requirement. We need not address their argument concerning the trial court's findings or the sufficiency of the evidence.

The judgment (order of commitment) is reversed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied August 9, 2002, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied October 2, 2002. Kennard, J., was of the opinion that the petition should be granted.