Filed 11/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B292119 |
| Plaintiff and Respondent, | (Super. Ct. No. 18PT-00498) |
| | (San Luis Obispo County) |
| v. | |
| PIERRE R., | |
| Defendant and Appellant. | |

       Pierre R. suffers from a multitude of mental infirmities.  The trial court found that he is a Mentally Disordered Offender.  (MDO Act; Pen. Code, § 2960 et seq.).[1]  His range of mental infirmities provides a real challenge for mental health professionals.  And it is somewhat challenging for the courts to "pigeonhole" his multiple disorders into the statutory scheme.  He appeals the trial court's order committing him to the Department of Mental Health for treatment.  We affirm.

---

       [1] All statutory references are to the Penal Code unless otherwise stated.

*Procedural History*

In 2016, appellant, a registered sex offender, accosted an 11-year-old girl in the presence of her mother. He walked his fingers up the girl's arm and shoulder, touched her face, and tried to walk away with her. Mother protested. The police were summoned and appellant was arrested. Appellant pled no contest to felony annoying or molesting a child under the age of 18 with a prior conviction (§ 647.6, subds. (a)(1) & (c)(1)). He was sentenced to state prison.

In 2018, the Board of Prison Terms certified appellant as an MDO and committed him to the State Department of Mental Health for treatment. Appellant filed a petition challenging the decision (§ 2966, subd. (b)), and personally waived jury trial.

Doctor Angie Shenouda, a forensic psychologist, opined that appellant suffered from schizophrenia and pedophilic disorder, severe mental disorders pursuant to the MDO Act. She said that appellant had a long history of sexually deviant behaviors directed at prepubescent girls. The schizophrenia, described as schizoaffective disorder in appellant's mental health records, was manifested by hallucinations, delusions, disorganized speech, and paranoia.

Dr. Shenouda opined that the schizophrenia was not in remission and that appellant represented a substantial risk of harm to others because he lacked insight about his disorder and treatment. Appellant also had a history of severe mental illness related violence. It was a concern because appellant had an untreated substance abuse problem, was not medication compliant, and was on probation or supervised release when he committed the qualifying offense.

2

*Admissibility of Police Reports to Establish That*
*Commitment Offense Involved Force or Violence*

Appellant contends that the police report of the commitment offense was inadmissible and violated his due process rights in establishing that the commitment offense involved force or violence.  (§ 2962, subd. (e).)  Appellant forfeited the due process theory by not objecting on that ground.[2]  (*People v. Champion* (1995) 9 Cal.4th 879, 918 [due process objection waived]; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1116, fn. 20 [same].)

On the merits, there was no due process violation.  (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103 [application of ordinary rules of evidence under state law does not violate a federal constitutional right to present a defense or right to fair trial].)  Dr. Shenouda testified that the probation report stated that appellant touched the victim.  The probation report referred to a follow-up police report prepared by a police detective two days after appellant's arrest.  Appellant argued that the police report was not admissible under the MDO Act because it is "a different level of information than either a probation report or sentencing report."  The trial court overruled the objection and

---

[2] In the alternative, appellant argues that he was denied effective assistance of trial counsel, but he makes no showing that counsel's performance was deficient and that there was resulting prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.) "Failure to object rarely constitutes constitutionally ineffective legal representation . . . ."  (*People v. Boyette* (2002) 29 Cal.4th 381, 424.)

3

received the police report into evidence pursuant to section 2962, subdivision (f).

The current MDO statute provides that the underlying details of the commitment offense, "including the use of force or violence[] causing serious bodily injury, or the threat to use force or violence likely to produce substantial physical harm, *may be shown by documentary evidence, including, but not limited to,* preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals."  (§ 2962, subd. (f), italics added.)[3]

In *People v. Otto* (2001) 26 Cal.4th 200 (*Otto*), our Supreme Court held that multiple hearsay in a probation report, derived from police reports about the qualifying offense, was admissible pursuant to the Sexually Violent Predators Act (SVP; Welf. & Inst. Code, § 6600, subd. (a)(3)) and did not violate defendant's due process rights.  (*Id.* at pp. 206-207, 209-215; see *People v. Burroughs* (2016) 6 Cal.App.5th 378, 410 [same].)  There is no reason why this same principle does not apply to the

_____

[3] In 2016, the Legislature amended section 2962, subdivision (f) (see Stats. 2016, ch. 430, § 1, eff. Jan. 1, 2017 (S.B. 1295) in response to *People v. Stevens* (2015) 62 Cal.4th 325 which held that hearsay testimony by a mental health expert based on documentary evidence could not be used at a MDO hearing to prove the commitment offense involved force or violence or the threat of force or violence.  (*Id.* at p. 339.)  The Supreme Court stated that "the Legislature is free to create exceptions to the rules of evidence as it has done in the SVP context."  (*Ibid.*)  That is exactly what section 2962, subdivision (f) does.  (See Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1295 (2015-2016 Reg. Sess.) Aug. 22, 2016, p. 5.)

4

MDO Act (§ 2962, subd. (f)) which mirrors the SVP Act (Welf. & Inst. Code, § 6600, subd. (a)(3)). The purpose of the SVP Act and the MDO Act is "'to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.' [Citations.]" (*People v. McKee* (2010) 47 Cal.4th 1172, 1203.) "[C]ourts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime." (*Otto, supra*, 26 Cal.4th at p. 212.)

Here the police report has all the indicia of reliability to satisfy due process and is expressly referenced in the probation report. (*Otto, supra*, 26 Cal.4th at p. 211.) Like the probation report in *Otto*, the police report is admissible "documentary evidence" within the meaning of section 2962, subdivision (f). Appellant's trial counsel showed the police report to Dr. Shenouda and asked whether it stated that appellant approached the victim and stood six inches away from the victim. Appellant corroborated the details of the police report and admitted that he walked his fingers up the victim's arm, "pet" the victim, and "[p]ut her hair out of her eyes." The admission of the police report and Dr. Shenouda's testimony about the police report did not violate any due process right.

*Implied Threat of Force or Violence*

Appellant contends that annoying or molesting a child is not a crime of force or violence, but under the catchall provisions of section 2962, subdivisions (e)(2)(P) and (e)(2)(Q), the offense involved the implied threat to use force or violence. (See e.g., *People v. Kortesmaki* (2007) 156 Cal.App.4th 922, 928 & fn. 3.) Appellant asked the victim for her phone number, said he had a website called ILikegirls.com, and asked the victim's mother

5

"'Can your daughter come out to play?'" The mother grabbed the victim to get her away from appellant, took the victim to a restroom, and told appellant to go away. Appellant returned 30 minutes later, reached across the table, and walked his fingers up the victim's arm, touched her face, and pet her head. Appellant's words and actions showed that he wanted to have a sexual relationship with the victim and he would not take "no" for an answer. Even after the police were called, appellant stood close to the victim. He claimed that he was the King of England and had the power to adopt the 11-year-old girl. There was sufficient evidence of an implied threat to use force or violence in the commission of the offense. (§ 2962, subd. (e)(2)(Q).)

*90 Days of Treatment*

Appellant contends that he did not receive at least 90 days treatment for his mental disorder, as required by the MDO Act. (§2962, subd. (c).) The mental health records show that appellant was treated for schizoaffective disorder. However, appellant argues that schizoaffective disorder is not the same as "schizophrenia," and, therefore, he did not receive treatment for the disorder that was the aggravating cause for the underlying offense.

In *People v. Bendovid* (2018) 30 Cal.App.5th 585, defendant was diagnosed and treated in jail for nonqualifying disorders (mood and borderline personality disorders) before he was diagnosed and treated in prison for the qualifying mental disorder (delusional disorder). (*Id.* at pp. 588-589.) We held that the People could not bootstrap the treatment for mood and borderline personality disorder in place of treatment for the delusional disorder. (*Id.* at p. 595.) "The People must prove Bendovid was treated for *the* severe mental disorder that subjects

6

him to the MDO commitment.  [Citation.]  Proof that he was treated for other mental disorders is not sufficient.  [Citation.] . . . 'Section 2962, subdivision (c) specifically refers to treatment of "the" mental disorder, not "a" mental disorder.'  [ Citation.]" (*Ibid*.)

The mental health records state that appellant was treated for schizoaffective disorder which, technically, is at variance with Dr. Shenouda's testimony that appellant was treated for schizophrenia.  This, however, is much ado about nothing.  At oral argument, appellant admitted that schizophrenia and schizoaffective disorder are substantially the same and call for the same treatment.  We accept this concession.[4]

The medical literature supports our conclusion.  "Schizoaffective" means "pertaining to or exhibiting of both schizophrenic and mood disorders (mania and depression)." (Dorland's *Illustrated* Medical Dictionary (28th ed.1994) p. 1491.) The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-5), Schizoaffective Disorder, states:  "Distinguishing schizoaffective disorder from schizophrenia and from depressive and bipolar

---

[4] What is appellant's disorder or infirmity?  Or perhaps we should rephrase the question: What are appellant's disorders and infirmities?  Schizophrenia, pedophilia, sexual deviancy, mental illness relating to violence, substance abuse, schizoaffective disorder, paranoia, hallucinations, delusions, disorganized speech, lack of insight, or all of the above?  Just where to start on these problems should be left to the sound judgment of mental health professionals.

7

disorders with psychotic features is often difficult." (*Id.* at p. 109.) Different diagnostic criteria are used to make the distinction and the diagnosis can change over time. (*Ibid*.) Unlike *Bendovid*, appellant received treatment for his mental disorder for the full 90 days.

We reject the form-over-substance argument that a mental health expert at a MDO hearing must testify that the treatment for the severe mental disorder matches, word-for-word, the mental disorder which was a cause for the underlying offense. Mental health treatment should be adjusted to the symptoms an MDO is then experiencing. Appellant related that he was the King of England when arrested. This sounds like schizophrenia, the diagnosis for which he claims that went untreated. But the mental health reports do not show that appellant continued his claim that he was the King of England. Should the 90 days of treatment focus on trying to make him understand that he is not even English, let alone the King of England?

Appellant cites no authority that the treatment for schizophrenia is not substantially the same as schizoaffective disorder or that section 2962, subdivision (c) requires that the diagnosis be static during the 90-day treatment period. That is what the DSM-5 warns about when schizoaffective disorder is diagnosed and treated. Appellant's mental health records bear that out. On September 23, 2017, the treating psychiatrist, diagnosed appellant as suffering from "Schizoaffective Disorder" and "Schizoaffective Disorder, Bipolar." A second entry, made the same day, states that appellant "currently meets criteria for *conditional diagnosis* of [DSM-5] 295.70 Schizoaffective Disorder, Bipolar Type per hx [i.e., history] and medication treatment." (Italics added.) The mental health records state it was

8

appellant's "6th term with CDCR, [and that appellant] has an extensive arrest history (20+ times) since 1990. He is also a PC 290 registrant . . . [and] [h]e has been to outpatient and impatient care in the community. He was admitted to Patton State Hospital three times in 2005, 2007, and 2011, [and appellant] has been receiving mental health services in CDCR since 2001 . . . ." Appellant had a history of substance abuse (alcohol, marijuana, and methamphetamine), three or four suicide attempts, paranoia, depression, mood swings, irritability, and impulsivity, and told a hospital clinician that he was not taking his medication and suffered from attention deficit hyperactivity disorder (ADHD), which he described as "'hyper, I forget things.'"

It took no leap of logic for the trial court to factually find that appellant met all the MDO criteria and should be committed to the Department of Mental Health for treatment.[5]

*Disposition*

The judgment (MDO commitment order) is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, Acting P. J.

I concur:

PERREN, J.

---

[5] Finally, appellant contends that the jury waiver was ineffectual. There is no factual basis for this and the claim does not require any legal analysis.

TANGEMAN, J., Dissenting:

I respectfully dissent. The record does not support the majority's conclusion that appellant received 90 days of treatment for the disorder for which he was committed as a Mentally Disordered Offender (MDO). The majority effectively declares that diagnosis and treatment for schizoaffective disorder and schizophrenia are interchangeable. That may or may not be true as a matter of psychiatric treatment, but it is not the role of the court to so declare in the absence of expert testimony in the record in support of that conclusion.

Forensic psychologist Dr. Angie Shenouda testified that appellant suffered from schizophrenic and pedophilic disorders. The prosecution conceded the MDO criteria was not met for the pedophilic disorder.

Shenouda did not opine whether appellant received at least 90 days of treatment for his schizophrenic disorder. Instead, the prosecution submitted appellant's treatment records from the California Department of Corrections and Rehabilitation. The records reflect that appellant was diagnosed with, and treated for, "Schizoaffective Disorder" and "Schizoaffective Disorder, Bipolar Type."

In *People v. Bendovid* (2018) 30 Cal.App.5th 585, 595 (*Bendovid*), we held there was insufficient evidence to show that the defendant received at least 90 days of treatment for delusional disorder. We concluded that evidence of his treatment for an unspecified mood disorder could not be considered towards the 90-day treatment for delusional disorder because "the different diagnoses meant Bendovid was being diagnosed and treated for a different disorder in prison than the two disorders he was diagnosed and treated for in jail." (*Id.* at p. 590.)

1

Similarly here, the evidence shows appellant was diagnosed and treated by the state hospital for schizoaffective disorder, but there is no evidence he received treatment for schizophrenic disorder. The majority glosses over this fundamental distinction by concluding, without supporting evidence in the record, that appellant's "schizophrenia [was] described as schizoaffective disorder in appellant's mental health records." (Maj. opn. *ante*, at p. 2.) Schizophrenic disorder and schizoaffective disorder are not the same mental disorder. (See American Psychiatric Assn., Diagnostic & Statistical Manual of Mental Disorders (5th ed. 2013) pp. 99, 105-106 [diagnostic criteria for schizophrenic disorder includes a determination that "schizoaffective disorder . . . have been ruled out"].)

The majority concludes that schizoaffective disorder "sounds like schizophrenia." (Maj. opn. *ante*, at p. 8.) It accordingly "reject[s] the form-over-substance argument that a mental health expert at [an] MDO hearing must testify that the treatment for the severe mental disorder matches, word-for-word, the mental disorder which was the cause for the underlying offense." (*Ibid*.) But different words have different meanings, and the prosecution introduced no evidence on the similarity between these different disorders at trial. It is not our role to "fill in the gap" by speculating how qualified mental health professionals would have testified about the similarities (or dissimilarities) in the diagnosis and treatment of these two distinctive disorders, if they had been asked (which they were not).

More troubling is the majority's statement that "[a]ppellant cites no authority that the treatment for schizophrenia is not substantially the same as schizoaffective

2

disorder" or that his diagnosis did not change "during the 90-day treatment period." (Maj. opn. *ante*, at p. 8.) This turns the burden of proof on its head. It is the prosecution's burden to prove that the six criteria of Penal Code section 2962 have been satisfied; not appellant's burden to prove otherwise. (*People v. Sheek* (2004) 122 Cal.App.4th 1606, 1611.)

Finally, I disagree with the majority's contention that appellant "admitted that schizophrenia and schizoaffective disorder are substantially the same and call for the same treatment" at oral argument. (Maj. opn. *ante*, at p. 7.) I view the colloquy between court and counsel differently.[1] Counsel for

---

[1] The following colloquy occurred between the court and counsel:

"[Court]: What does the word schizophrenia mean?

[Counsel]: . . . That would have been a great question for the prosecutor to ask the expert witness and put into evidence. *Because there is no evidence to connect schizophrenia and schizoaffective disorder.*

[Court]: What is schizoaffective disorder?

[Counsel]: . . . [T]hat would be the kind of thing the prosecutor who had the burden of proof to carry beyond a reasonable doubt ought to have thought about when they had this gigantic gap in the evidence where on the one hand, they submitted the records to prove this element . . . and the records says 'schizoaffective disorder' and then they put on an expert who said this person suffers from schizophrenia without mention whatsoever about how those two relate."

Later in argument, the following transpired:

"[Court]:  Do you think there's a difference in the medical treatment for a person suffering from schizophrenia and . . . schizoaffective disorder?

[Counsel]:  . . . I have experience in this and I would say 'yes, they are substantially the same; however, . . . let's say they are identical, *where's the evidence of that*?'"

Still later, the following occurred:

"[Court]:  . . . Is that a concession that there is no substantial difference between schizophrenia and schizoaffective disorder?

[Counsel]:  My understanding is that schizoaffective disorder includes schizophrenia plus another disorder, like a depressive element.  And so, the treatments would overlap at least, or if not be identical.

[Court]:  You're saying that if you are treated for schizoaffective disorder, you are necessarily treated for schizophrenia?

[Counsel]:  Yes. I did.

[Court]:  That's what I thought you said. . . .

[Counsel]:  . . . *[T]he question is simply whether . . . a trier of fact . . . is allowed to fill in that gap of their own personal knowledge or guesswork or anything else when there is absolutely no evidence in the record to support it.*"

4

appellant clearly and repeatedly argued that any assumptions one might make about similarities between these different disorders, including the court's or his own, could not be a substitute for evidence *in the record*.

Here, the prosecution did not present evidence of the similarity between these two disorders, or that treatment of these disorders is necessarily the same. Based on this record, the "court had no basis to find [appellant] was treated for the disorder that was relevant to his commitment." (*Bendovid*, *supra*, 30 Cal.App.5th at p. 591.)

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Christopher Lionel Haberman, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Christopher G. Sanchez, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.