Filed 3/2/21; Certified for Publication 3/22/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C090409 |
| Plaintiff and Respondent, | (Super. Ct. No. 17CF03707) |
| v. | |
| DAVID HENRY CURRY, | |
| Defendant and Appellant. | |

After a jury found him guilty of robbery, and before the trial court sentenced him to state prison for 40 years to life and imposed various costs, defendant David Henry Curry sought to file a motion for mental health diversion pursuant to Penal Code section 1001.36.[1]  The trial court ruled the motion was untimely and did not consider it.  On appeal, defendant contends:  (1) the trial court erred by denying as untimely his request for mental health diversion; (2) if the diversion request was untimely, trial counsel

---

[1] Undesignated statutory references are to the Penal Code.

1

provided ineffective assistance; and (3) the trial court violated due process principles by imposing costs without determining defendant's ability to pay.

We agree with defendant's first contention and conditionally reverse the judgment with instructions for the trial court in considering defendant's eligibility for mental health diversion. Our holding moots defendant's second contention. Last, we disagree with defendant's due process challenge to costs imposed.

## I. BACKGROUND

On June 24, 2016, defendant entered a bank in Chico during business hours, tossed a note demanding money at a bank employee, and then pointed a firearm at her. Defendant left the bank with money the employee gave to him.

Law enforcement officers were unable to identify defendant as the culprit of the Chico bank robbery until he committed another bank robbery in Tacoma, Washington in January 2017.

In July 2017, a Butte County deputy district attorney filed a criminal complaint, charging defendant with second degree robbery and further alleging that defendant suffered two or more prior serious or violent felonies for purposes of sections 667 and 1170.12, subdivision (b).

On June 5, 2018, the trial court declared a doubt as to defendant's competence and suspended criminal proceedings.

On June 27, 2018, the statute at issue here (§ 1001.36) became effective, creating a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34, § 24.)

A July 2018 psychological evaluation report concluded that defendant had the mental capacity to assist in his own defense. The "interview" section of the report noted that defendant "presented no symptoms of mental illness in the interview." The "diagnosis" section of the report concluded that defendant suffered "mild symptoms of situation related anxiety and depression," which "anxiety did not seem abnormal . . .

2

given" defendant's "custody issues" arising out of his belief that his wife illegally took his daughter out of the country. The same section noted that defendant's "[p]ersonality was not assessed."

After reviewing the report, the trial court found defendant competent and reinstated criminal proceedings.

Later, in July 2018, defendant obtained new counsel.

In September 2018, the information was filed, containing the robbery charge and prior felony allegations.

In March 2019, a jury found defendant guilty of the robbery, and the trial court later found true that defendant suffered three prior serious felony convictions alleged.

Several months after the jury's verdict, defendant indicated to his counsel that he wished to represent himself, and in June 2019, the trial court granted defendant's motion to do so.[2]

At a July 2019 hearing, the trial court denied several post-trial motions that defendant filed as a pro per (including a motion for a new trial) that are not germane to the issue before us. Also at the hearing, defendant told the trial court that he wanted to "file . . . other . . . motions," including a motion for mental health diversion pursuant to section 1001.36. The trial court concluded: "That's a pretrial motion, so you have to request that pretrial. You elected to go to a jury trial, so that's . . . not timely."

Defendant replied that he raised the issue with his trial counsel "well in advance," but "she never even investigated it, you know. My mental health at the time was brought up."

The trial court wondered aloud whether the pretrial diversion law was in effect "at the beginning of [defendant's] case," and defendant replied that the law was effective in

---

[2] Pursuant to *Faretta v. California* (1975) 422 U.S. 806, 819 [45 L.Ed.2d 562].

June 2018, before he hired his last attorney. The trial court responded: "Okay. Well, I'm going to deny that. So th[e] . . . motion[] [is] not timely, so I'm not going to have you file [it]."

A probation officer's August 2019 presentencing report noted that defendant: (a) indicated that he was diagnosed with severe depressive disorder in " 'early 2000,' " and (b) "disclosed that his daughter was abducted by her mother . . . the day prior to" the Chico robbery. The report continued: "[Defendant] spoke of his heartbreak over his daughter being transported [out of the country], without his knowledge or permission, and not being in contact with her."

Attached to the report was a written statement and supporting documents that defendant submitted to the probation officer. Included in defendant's submission was a copy of a letter from the Office of Children's Issues at United States Department of State, referencing the "case that was opened on July 7, 2016, on behalf of [defendant's] child."

At the August 2019 sentencing hearing, the trial court said: "I am very familiar with [defendant's] . . . situation and what [he was] going through in relation to [his] daughter . . . . I can only imagine what a horrific situation that is."

Later at the hearing, defendant told the trial court that, when his daughter "was taken from [him]," he "had nervous breakdowns every single day and, at the time of th[e] crime, [he] lost touch with reality."

Ultimately, the trial court sentenced defendant to an indeterminate term of 25 years to life for the robbery (pursuant to the three strikes law, section 667, subdivision (e)(2)), consecutive to a determinate term of 15 years (five-year enhancements for each of the three prior serious felonies, pursuant to section 667, subdivision (a)).

Regarding costs, in addition to victim restitution, the trial court imposed a $300 restitution fine (§ 1202.4), a suspended $300 parole revocation fine (§ 1202.45), a $40 court operations fee (§ 1465.8), a $30 conviction assessment fee (Gov. Code, § 70373), and $39 in additional fines, fees, and assessments, for a total of $409.

4

Defendant timely appealed.

## II.  DISCUSSION

Defendant contends the trial court erred by denying as untimely his request for mental health diversion.  Specifically, defendant argues diversion under section 1001.36 is available "at any time prior to sentencing," as "[n]othing in the plain language of section 1001.36 precludes" diversion before sentencing, and permitting a trial court to grant mental health diversion until sentencing is "fully consistent with the Legislature's intent."

The People do not take a position on the timeliness of defendant's request.  They argue we need not decide the issue, because a "summary denial of [defendant's] request was entirely appropriate on this record."  The People insist we must reject defendant's claim because he "failed to meet his burden to show an error that resulted in a miscarriage of justice on this record."

Because we conclude section 1001.36 contemplates mental health diversion until entry of the judgment of conviction, we conclude the trial court erred by refusing to consider defendant's request for diversion.  Further, we conclude that because the record affirmatively discloses that defendant appears to suffer from a qualifying mental disorder, a conditional limited remand is appropriate.

*A.*     *"Until Adjudication" Means Until the Judgment of Conviction*

In construing a statute, our goal is to ascertain the Legislature's intent in order to effectuate the purpose of the law.  First, we examine the language of the statute, giving the words their usual, ordinary meaning.  If the language is clear and unambiguous, we follow the plain meaning of the measure.  (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)

But if an examination of the plain meaning of the statutory language "fail[s] to resolve the dispute, we next consider the context in which the[] words appear, attempting

5

to harmonize the words of the statute within the overall statutory scheme." (*People v. Valladoli* (1996) 13 Cal.4th 590, 599 (*Valladoli*).)

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, *at any point in the judicial process from the point at which the accused is charged until adjudication*, to allow the defendant to undergo mental health treatment . . . .' (§ 1001.36, subd. (c).) The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)-(6).) Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017-2018 Reg. Sess.) (Senate Bill 215) to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for

6

diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion.  (§ 1001.36, subds. (a), (b)(3) & (c)(1).)"  (*People v. Frahs* (2020) 9 Cal.5th 618, 626-627 (*Frahs*), italics added.)

In *Frahs*, our Supreme Court ruled that the "inference of retroactivity" articulated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) applies to the mental health diversion program, such that a defendant whose case is not yet final on appeal is "entitled to a limited remand for the trial court to decide whether he should receive diversion under section 1001.36," (*Frahs, supra*, 9 Cal.5th at pp. 624, 625) "when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))" (*id.* at p. 640).

While the procedural posture of this case is different, our high court's discussion of the mental health diversion statute is pertinent.  (See *People v. Rios* (2013) 222 Cal.App.4th 542, 563 ["Supreme Court dicta generally should be followed, particularly where the comments reflect the court's considered reasoning"].)

Explaining why it found *unpersuasive* the People's argument that the definition of "pretrial diversion" in section 1001.36, subdivision (c) "dispell[ed] *Estrada*'s inference of retroactivity," (*Frahs, supra*, 9 Cal.5th at p. 632) the *Frahs* court said:  "The People . . . maintain that the phrase 'until adjudication' expressly limits retroactive application of the statute to defendants whose cases had not yet been, in the People's words, 'resolved by a trier of fact.'  [¶]  We are not persuaded.  Like the Court of Appeal, we view the definition of 'pretrial diversion' as simply reflecting the Legislature's intent regarding how the statute will generally operate when a case comes before the trial court after section 1001.36's enactment.  In the ordinary course of procedure, a trial court determines whether a defendant is eligible for pretrial diversion *before judgment is entered*, and the defendant cannot be heard to seek such diversion afterward.  Broadly

7

consistent with this common feature of pretrial diversion, the statute before us provides that diversion is available 'until adjudication' (§ 1001.36, subd. (c)), which the People construe as until the charge or charges against a defendant are resolved. But that expectation regarding how the statute normally will apply going forward is quite different from the specific retroactivity question presented here, to which the *Estrada* inference applies." (*Id.* at pp. 632-633, italics added, fn. omitted.)

In a footnote that appears in the midst of the text quoted above, the court said: "[W]e have no occasion here to precisely define 'until adjudication,' as used in section 1001.36, subdivision (c), and our analysis should not be read as tacitly adopting the People's interpretation of this language." (*Frahs, supra*, 9 Cal.5th at p. 633, fn. 3.)

Later in the opinion, when rejecting the People's arguments that (a) the word "pretrial" in the phrase "pretrial diversion" and (b) the "eligibility factor requiring a defendant to waive his or her right to a speedy trial" together "ma[de] clear that the Legislature did not intend for diversion to be available to defendants whose trials had concluded," our high court said, "this language simply explains how the mental health diversion program will ordinarily function: In the normal course of operations, a trial court would determine before trial whether a defendant is eligible for pretrial diversion." (*Frahs, supra*, 9 Cal.5th at p. 633.)

And later still, when rejecting the People's argument that retroactive application of the mental health diversion statute "would risk potentially 'undermining the legitimacy' of a jury's verdict," because "defendants suffering from mental illness will frequently pursue a mental health defense, which a jury must necessarily reject by reaching a guilty verdict," the *Frahs* court observed that "[t]he Legislature could well have intended to allow judges to decide under the statute whether a defendant's mental disorder was a 'significant factor in the commission of the charged offense' [citation] *even after a verdict* in which a mental health defense had been presented but rejected by the trier of fact." (*Frahs, supra*, 9 Cal.5th at p. 636, italics added.)

8

Given the above, while there is some language in *Frahs* that reasonably might be cited in support of the argument that the phrase "until adjudication" in section 1001.36 should be interpreted to mean "until adjudication *of guilt*," we think the weight of considered reasoning in the case suggests that the phrase "until adjudication" should be interpreted to mean "until the judgment of conviction"—which does not occur until sentencing.  (See *People v. McKenzie* (2020) 9 Cal.5th 40, 46 ["In criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence"].)

But even though the balance of dicta in *Frahs* might favor such a conclusion, we cannot say that the plain meaning of "until adjudication" is clear and unambiguous.  (See *People v. Weaver* (2019) 36 Cal.App.5th 1103, 1120 [" 'adjudication' is a 'shorthand for the adjudication of guilt or acquittal' [citation] and '[a]t most . . . could be synonymous with the rendition or pronouncement of judgment, which occurs at the time of sentencing' "].)

Accordingly, we consider the context in which the words appear, to harmonize the words of the statute within the overall statutory scheme.

*Frahs* is helpful on this question too, as our Supreme Court said the appellate court (whose decision was on review) "reasonably regarded the statement of legislative purpose found in section 1001.35, subdivision (a) as bolstering the conclusion 'that the Legislature intended the mental health diversion program *to apply as broadly as possible*.' "[3]  (*Frahs, supra*, 9 Cal.5th at p. 632, italics added.)

---

[3] In full, section 1001.35, provides:  "The purpose of this chapter is to promote all of the following:  [¶]  (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.  [¶]  (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.  [¶]  (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders."

A legislative intent that the mental health diversion program apply as broadly as possible leads to the conclusion we should interpret the phrase "until adjudication" to mean "until the judgment of conviction" (of which sentencing is a necessary component) rather than "until adjudication of guilt," as the former interpretation potentially includes more cases.

Such a conclusion would be consistent with the notion—woven throughout section 1001.36—that the trial court, being in the best position to decide the matter, has broad discretion to determine whether a given defendant is a good candidate for mental health diversion.

One eligibility requirement a defendant must meet—that his mental disorder was a "significant factor in the commission of the charged offense"—contemplates a trial court's "review[] [of] any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements . . . or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1001.36, subd. (b)(1)(B).)

Another eligibility requirement—that the trial court be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community"—permits a trial court to "consider the opinions of the district attorney, the defense, or a qualified mental health expert, and . . . the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (b)(1)(F).)

Another part of the statute says a trial court "may require the defendant to make a prima facie showing" of eligibility for diversion and suitability for diversion "[a]t any stage of the proceedings." (§ 1001.36, subd. (b)(3).) "If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (*Ibid*.)

10

These provisions of the statute create an overall statutory scheme that empowers the trial court's with broad discretion regarding when to decide if a given defendant is eligible and suitable for diversion, what evidence is relevant to the decision, and which factors are appropriate (in deciding whether defendant will pose an unreasonable risk of danger to the public if treated in the community).

Our conclusion—simply that a defendant may ask the trial court for mental health diversion until sentencing and entry of judgment—harmonizes with that overall statutory scheme.[4]  (See *Valladoli, supra*, 13 Cal.4th at p. 599.)

---

[4] Recognizing that one implication of our ruling is that, in theory, a defendant might be tempted to utilize tactics that would implicate "gamesmanship" concerns and frustrate the People's due process rights (*People v. Ault* (2004) 33 Cal.4th 1250, 1269), we observe that the combination of (a) the likelihood that, in the typical case, the trial court that presides over the trial will be the same trial court to consider the post-trial request for mental health diversion, and (b) the trial court's broad discretion, should deter such questionable defense tactics.  (See *Valladoli, supra*, 13 Cal.4th at pp. 594, 607 ["Section 969a expressly gives discretion to our trial judges to permit or deny the amendment" of a charging document to include prior felony conviction enhancement allegations after a jury verdict on the substantive crimes but before the jury is discharged, "and we rely in such matters on the prudent exercise of that discretion to ensure the due process rights of criminal defendants are adequately protected," which consideration includes trial court "scrutin[y]" of "the reason for the late amendment," and "whether the prosecution's initial failure to allege the prior convictions affected the defendant's decisions during plea bargaining, if any"]; cf. *Packer v. Superior Court* (2014) 60 Cal.4th 695, 714 ["[w]e have no doubt that a trial court would have discretion to deny a motion to recuse a district attorney that was proffered on behalf of a criminal defendant whose counsel engaged in improper gamesmanship," but because defense counsel "maintained that there were legitimate reasons" for his tactics, an evidentiary hearing was needed]; *People v. Fudge* (1994) 7 Cal.4th 1075, 1105-1107 [ruling the trial court's denial of a midtrial continuance was not an abuse of discretion where the trial court perceived subtle actions by defense counsel as delay tactics, which the trial court labeled "gamesmanship"].)

Given our construction of section 1001.36, subdivision (c), the trial court erred by refusing to consider—as untimely—defendant's mental health diversion request, made after trial but before sentencing.[5]

B.     *The Remedy*

"The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) We have interpreted that language as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)" (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60.)

The *People v. Watson* harmless error analysis "is by definition a case-by-case analysis. Particularized analysis is critical." (*In re J.P.* (2017) 15 Cal.App.5th 789, 799.)

In *Frahs*, the court ruled "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))." (*Frahs, supra*, 9 Cal.5th at p. 640.) In reaching that conclusion, our Supreme Court rejected the People's argument "that a defendant must demonstrate that he or she satisfies all six threshold eligibility requirements before an appellate court may remand the case to the trial court for a diversion eligibility hearing," noting the likely difficulty of analyzing a record on appeal that does not "include information pertaining to several eligibility factors." (*Id.* at pp. 637-638.)

---

[5] This conclusion moots defendant's claim of ineffective assistance of counsel in failing to request mental health diversion, which we will not discuss further.

12

Here, though no hearing was held regarding defendant's possible eligibility for mental health diversion, the psychologist who evaluated defendant's competency for trial diagnosed "mild symptoms" of "anxiety and depression," and did not conduct a personality assessment; defendant told the probation officer who prepared the presentencing report that he had been diagnosed with "severe depressive disorder"; and at the sentencing hearing, before he was sentenced, defendant told the trial court that, around the time of the bank robbery, he "had nervous breakdowns" and "lost touch with reality." This record affirmatively discloses that defendant *appears* to suffer from one or more qualifying mental disorders (depressive disorder).[6]

Though *Frahs* had a different procedural posture, we think apt the opinion's considered analysis of the difficulty of analyzing an appellate record where no diversion eligibility hearing was held. Accordingly, we will not adjudicate in the first instance the parties' competing claims regarding defendant's eligibility for mental health diversion.

We will conditionally reverse the judgment with directions for the trial court to consider defendant's eligibility for mental health diversion under section 1001.36. Consistent with the procedure outlined in *Frahs, supra*, 9 Cal.5th at pp. 640-641, we provide the following instructions for the trial court in considering defendant's eligibility for diversion under section 1001.36: If the trial court finds that defendant meets the six statutory criteria, then the court may grant diversion. If defendant successfully completes diversion, then the court shall dismiss the charges. But, if the trial court determines that

---

[6] See *People v. Sheek* (2004) 122 Cal.App.4th 1606, 1608-1611 (discussing a parolee's diagnosis of depressive disorder in considering a dispute whether the Board of Prison Terms correctly concluded the parolee had to be committed for treatment as a condition of parole under the Mentally Disordered Offender Act).

Section 1001.36, subdivision (b)(1)(A) explicitly excludes several mental disorders, but not depressive disorder, from eligibility for mental health diversion consideration.

defendant does not meet the criteria under section 1001.36, or if defendant does not successfully complete diversion, then his conviction and sentence shall be reinstated.

### C.    Costs Imposed

Defendant contends the trial court's imposition of costs without first determining his ability to pay violated due process principles, as articulated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Anticipating the People's argument that he forfeited this claim by failing to raise it before the trial court, defendant insists the issue is not forfeited, because: his claim implicates "fundamental rights"; the imposition of costs via a due process violation "amounted to an unauthorized sentence"; and "the fundamental constitutional rights at issue here are not subject to traditional forfeiture doctrines."

In addition to their argument defendant forfeited this claim by failing to raise it in the trial court, the People argue we should affirm the imposition of costs.

Because the forfeiture question and the merits of the issue rise or fall together, we conclude defendant's claim is both forfeited on appeal and lacks merit. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 465-466 [concluding an appellate claim was forfeited, and "[e]ven if not forfeited, the claim fails"].)

Defendant's due process claim—and by implication, his argument that the claim is not forfeited[7]—hinges on the analysis in *Dueñas*, finding an ability to pay hearing is required before imposing fines and fees, and we are not persuaded that this analysis is correct. Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires

---

[7] Because defendant's August 2019 sentencing hearing occurred seven months after *Dueñas* was published, under general principles law, defendant has forfeited the issue on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 351.)

the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra,* at pp. 95-96.)

In the meantime, we join several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

Thus, defendant's due process claim pursuant to *Dueñas* lacks merit. And, because the due process claim lacks merit, defendant's arguments why the claim is not forfeited also lack merit.

### III. DISPOSITION

The imposition of costs is affirmed, but the judgment is conditionally reversed. The matter is remanded to the trial court with directions (outlined above) to hold a diversion eligibility hearing under section 1001.36. We express no view whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

DUARTE, J.

16

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C090409 |
| Plaintiff and Respondent, | (Super. Ct. No. 17CF03707) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| DAVID HENRY CURRY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Kimberly Merrifield, Judge. Affirmed in part and reversed in part with instructions.

The Law Offices of Aaron J. Schechter and Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

THE COURT:

The opinion in the above-entitled matter filed March 2, 2021, was not certified for publication in the Official Reports.  For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


/S/
_____
HULL, Acting P. J.


/S/
_____
DUARTE, J.


/S/
_____
RENNER, J.